THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CALBERT BOYNE, Appellant.

First Department, January 16, 1992

### APPEARANCES OF COUNSEL

*Arthur H. Hopkirk* of counsel *(Philip L. Weinstein,* attorney), for appellant.

*Sylvia Wertheimer* of counsel *(Mark Dwyer* with her on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

### OPINION OF THE COURT

Ross, J.

The primary issues presented on this appeal are whether defendant was deprived of a fair trial by Criminal Term's responses, without consultation with counsel, to oral questions asked by members of the jury during deliberations, and further was defendant deprived of a fair trial by Criminal Term's denial of defense counsel's request for an adverse inference instruction or to impose an appropriate sanction for the destruction of a 911 tape.

During the afternoon of March 9, 1989, New York City police officers arrested defendant and Mr. Fred Smith in New York County. Thereafter, by indictment number 3663/89, filed March 24, 1989, a New York County Grand Jury charged defendant and Mr. Smith with committing the crimes of robbery in the first degree (Penal Law § 160.15) and robbery in the second degree (Penal Law § 160.10).

Following arraignment on the indictment, and the completion of pretrial proceedings, a joint jury trial of defendant and Mr. Smith commenced on December 6, 1989.

The People's case consisted primarily of the testimony of Ms. Janet Clancy, Mr. Ahmed Malik, and New York City Police Officers Diane Greco (Officer Greco) and Peter Cooper (Officer Cooper).

Ms. Clancy, who is a freelance theatrical technician, testified, in substance, that, at approximately 3:30 P.M., on March 9, 1989, she parked her gray Schwinn mountain bike on the east side of Fifth Avenue, between 19th and 20th Streets, New York County. While she used one u-lock to lock the center

section of the bicycle frame and the rear wheel to the single post of a parking sign, she used a second u-lock to secure the front wheel to the frame. Further, Ms. Clancy stated that she had not, on March 9, 1989, or at any other time, given defendant or Mr. Smith permission or authority to take her bicycle.

Mr. Malik, who is a security guard and who was in uniform, testified that, in substance, while walking in the vicinity of Fifth Avenue and 20th Street, he heard three loud banging noises. When he investigated, he observed defendant and Mr. Smith taking turns swinging a two-by-four wooden board (board) at the parking sign, where Ms. Clancy had parked her bicycle, and finally the bicycle came loose. Since Mr. Malik did not believe that the bicycle belonged to the defendant and Mr. Smith, he tried to stop them from taking it. In order to make Mr. Malik release his grip on the bicycle, defendant swung the two-by-four board at him, striking him on the wrist and forearms. Thereafter, defendant and Mr. Smith fled the scene. Finally, Mr. Malik testified that he called 911.

Officer Greco testified that, in substance, she was on foot patrol, at the corner of Union Square East and 15th Street, when a male civilian, by the name of Mr. Carty, told her that he had seen two men steal a bicycle at Fifth Avenue and 20th Street, and that they were now heading east on 18th Street from Park Avenue South. As a result of that conversation, Officer Greco sent a transmission over her police radio.

Officer Cooper testified that, in substance, he heard Officer Greco's transmission, and thereafter he arrested defendant and Mr. Smith in the area of 18th Street, between Irving Place and Park Avenue South. At the time of the arrest, the defendant and Mr. Smith were in possession of both the bicycle and the two-by-four board.

In response, defendant testified in his own behalf. He stated that, in substance, since 1987 he has been stealing bicycles, and he has been convicted of one felony and two misdemeanors. While he admitted that he and Mr. Smith stole the subject bicycle, he denied that he had struck Mr. Malik with the two-by-four board.

Subsequently, the jury found defendant and Mr. Smith guilty of the crime of robbery in the second degree. Thereafter, Criminal Term sentenced defendant, as a predicate felony offender, to an indeterminate prison term of 7½ to 15 years. Defendant appeals.

Defendant contends that Criminal Term deprived him of a fair trial by responding, without consultation with counsel, to oral questions asked by members of the jury, during deliberations.

CPL 310.30 deals with the procedure to be followed by Criminal Term, when, during deliberations, the jury requests information. Specifically, the provisions of that statute read, in pertinent part: "At any time during its deliberation, the jury may request the court for further instruction or information with respect to the law, with respect to the content or substance of any trial evidence, or with respect to any other matter pertinent to the jury's consideration of the case. Upon such a request, the court must direct that the jury be returned to the courtroom and, after notice to both the people and counsel for the defendant, and in the presence of the defendant, must give such requested information or instruction as the court deems proper."

Recently, the Court of Appeals, in *People v O'Rama* (78 NY2d 270, 276 [1991]), stated that "CPL 310.30 * * * imposes two separate duties on the court following a substantive juror inquiry: the duty to notify counsel and the duty to respond." Further, in *People v O'Rama (supra,* at 277-278), that court held "that, in most cases, this requirement of meaningful notice is best served by following the procedure that was outlined in *United States v Ronder* (639 F2d 931, 934 * * *). Under this procedure, jurors' inquiries must generally be submitted in writing * * * Further, whenever a substantive written jury communication is received by the Judge, it should be marked as a court exhibit and, before the jury is recalled to the courtroom, read into the record in the presence of counsel * * * After the contents of the inquiry are placed on the record, counsel should be afforded a full opportunity to suggest appropriate responses * * * Finally, when the jury is returned to the courtroom, the communication should be read in open court".

Our examination of the trial transcript in the instant case indicates that, in the course of its deliberations, the jury sent a note to Criminal Term, requesting to see certain police reports prepared by Officer Cooper. After consulting with the prosecutor and defense counsel, Criminal Term brought the jurors into the courtroom, and informed them that their request could not be granted, since the relevant documents had not been admitted into evidence.

Thereafter, while the jury was still in the courtroom, the forelady, as well as juror number eight, orally asked Criminal Term questions about the elements of the crimes of robbery in the first (Penal Law § 160.15), second (Penal Law § 160.10), and third (Penal Law § 160.05) degrees, and petit larceny (Penal Law § 155.25), and Criminal Term spontaneously answered those questions, without consulting counsel.

The following is the colloquy between the forelady, juror number eight and Criminal Term:

"THE FORELADY: Your Honor the Jurors would like to hear the difference between one, two and three.

"THE COURT: You mean—

"THE FORELADY: Robbery.

"THE COURT: Robbery one has a dangerous instrument and dangerous instrument, robbery two aided by another person present.

"JUROR EIGHT: Does that have dangerous instrument?

"THE COURT: No, aided by another person, both forcible stealing. The one is dangerous instrument which is the board, whatever it is and the second aided by another person, doesn't have anything to do with the other. It's force. All right, okay. That is the difference between the two.

"JUROR EIGHT: Larceny can that be aided with another person?

"THE COURT: Well can't answer you see—you mean the petty larceny?

"JUROR EIGHT: Yes.

"THE COURT: Has nothing to do with aided by another person. Larceny. I stated before I said that a person forcibly steals property, commits robbery when in the course of committing a larceny, he uses or threatens the use of physical force etc.

"MR. GIDDENS [Defense Counsel]: May we approach for a moment please?

"THE COURT: No, no. They know what they want. We don't want, attorneys don't do that in my Court. They find out what they want and I will tell them.

"THE FORELADY: Thank you.

"THE COURT: You want the robbery, you want the petty larceny, you didn't ask for that.

"THE FORELADY: No.

"THE COURT: All right you may retire."

■ After our review of the colloquy, *supra,* we find that Criminal Term's spontaneous responses, dealing with the elements of the crimes of robbery and petit larceny, were, in effect, supplemental instructions, and inherently prejudiced defendant, since "the court's actions * * * deprived him of the opportunity to have input, through counsel * * * into the court's response to an important, substantive juror inquiry" *(People v O'Rama, supra,* at 279-280). Supplemental instructions "may well be determinative of the outcome of the case, coming as they do in response to questions raised by the jurors themselves" *(People v Ciaccio,* 47 NY2d 431, 436 [1979]).

Although this court recently in *People v Nevins* (— AD2d — [1st Dept, Dec. 3, 1991]) did not find reversible error, when Criminal Term answered oral questions from a jury about the elements of the crime of grand larceny in the fourth degree, we find that case distinguishable. Significantly, unlike in the instant matter, in *People v Nevins,* the oral inquiries were preceded by a written note requesting supplemental instructions about the same subject, namely, elements of the crime of grand larceny in the fourth degree. Further, in *People v Nevins (supra),* this court found a timely objection had not been made. In the instant matter, we find, as quoted *supra,* defense counsel unsuccessfully attempted to object and was prevented from so objecting by the trial court's refusal to entertain same.

In summary, based upon our legal and factual analysis *supra,* we find that Criminal Term committed reversible error, when it did not give defense "counsel * * * the opportunity to be heard *before* the response [to the forelady and juror eight was] given" *(People v O'Rama, supra,* at 277 [emphasis in text]).

■ Also, in view of our analysis, *infra,* we find merit to the defendant's contention that he was deprived of a fair trial, by Criminal Term's refusal to give an adverse inference instruction or impose another sanction for the destruction of the 911 tape of Mr. Malik's telephone call to the police.

As discussed *supra,* Mr. Malik testified that, subsequent to being allegedly struck by the defendant, with the two-by-four board, he called "911".

Our examination of the record indicates that defendant's counsel, during the pretrial proceedings, specifically, in his motion for a bill of particulars, filed with Supreme Court,

Criminal Term's Central Clerk's office, on May 31, 1989, made a timely request of the People to produce a copy of that 911 tape. According to defendant's counsel, on June 12, 1989, while in police custody, the 911 tape was erased, and the People do not dispute that fact. Further, the "People acknowledge that the 911 tape constituted *Rosario* material" (People's mem).

It is well-established law that the People have an obligation to make available to the defendant, before cross-examination, the prior statements of a prosecution witness, such as Mr. Malik *(see,* CPL 240.44, 240.45; *People v Rosario,* 9 NY2d 286, 289 [1961], *cert denied* 368 US 866 [1961]). The objective "of the *Rosario* rule is to afford the defendant a fair opportunity to cross-examine the People's witnesses" *(People v Poole,* 48 NY2d 144, 148-149 [1979]).

In *People v Martinez* (71 NY2d 937, 940 [1988]), the Court of Appeals held "[j]ust as the People have a duty to produce *Rosario* material they also have a correlative 'obligation to preserve evidence until a request for disclosure is made' *(People v Kelly,* 62 NY2d 516, 520 * * *). Thus, it is no answer to a demand to produce that the material has been lost or destroyed. If the People fail to exercise care to preserve it and defendant is prejudiced by their mistake, the court must impose an appropriate sanction. The determination of what is appropriate is committed to the trial court's sound discretion, and while the degree of prosecutorial fault may be considered, the court's attention should focus primarily on the overriding need to eliminate prejudice to the defendant".

Although defendant's counsel requested an adverse inference instruction for the destruction of the 911 tape, Criminal Term refused such request and did not impose any sanction.

Based upon our examination of the trial testimony, we find that the absence of the 911 tape severely prejudiced defendant, by denying his counsel the opportunity of using that tape to cross-examine Mr. Malik about his initial report to the police, and accordingly, we further find Criminal Term "erred in denying defendant's motion for a sanction, although not necessarily the sanction requested by defendant" *(People v Parker,* 157 AD2d 519, 520-521 [1st Dept 1990]).

In view of our findings of error by Criminal Term, requiring a new trial, we do not reach the other contentions of error made by defendant.

Accordingly, judgment, Supreme Court, New York County

(Joan B. Carey, J., at hearing; Clifford Scott, J., at trial and sentence), rendered January 29, 1990, convicting defendant, after a jury verdict, of the crime of robbery in the second degree (Penal Law § 160.10), and sentencing him, as a predicate felony offender, to an indeterminate prison term of 7½ to 15 years, is reversed, on the law and on the facts, judgment vacated, the matter remanded for a new trial and since the People concede a *Rosario* error, the trial court is directed to fashion an appropriate sanction.

WALLACH, J. P., KUPFERMAN and SMITH, JJ., concur.

Judgment, Supreme Court, New York County, rendered January 29, 1990, reversed, on the law and on the facts, the judgment vacated, the matter remanded for a new trial and since the People concede a *Rosario* error, the trial court is directed to fashion an appropriate sanction.