THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
RAMON NELSON, True Name NELSON RAMOS, Appellant.

First Department, February 23, 1993

## APPEARANCES OF COUNSEL

*Marlene Vasquez* of counsel *(Judith Preble* with her on the brief; *Philip L. Weinstein,* attorney), for appellant.

*Sandra L. Sneed* of counsel *(Alan Gadlin* with her on the brief; *Robert M. Morgenthau, District Attorney* of New York County, attorney), for respondent.

## OPINION OF THE COURT

ELLERIN, J.

On this appeal we must determine whether reversal is required by reason of the Trial Judge's refusal to impose any sanction for the People's inability to turn over a missing activity report of an arresting officer who testified at the trial.

Defendant was arrested on the afternoon of October 19, 1988 in a "buy and bust" operation. At trial, undercover Detective Christopher Washington testified that he approached defendant at the corner of 163rd Street and Broadway and asked him if he knew anyone who had "fishscales," a pure type of cocaine. Washington described defendant, whom he dubbed "JD Green Go," as wearing a green shirt with the word "Go" written just above the belt line, rust-colored pants, and black sneakers. Defendant made a gesture and led Washington to 516 West 162nd Street, where he directed Washington to give money to a third man. Washington handed the man $20 in prerecorded bills and was told to wait across the

street. After several minutes, Washington asked defendant, "What's up with my stuff?" in response to which defendant went inside the building. He returned some 30 seconds to a minute later and handed Washington a tinfoil packet. Washington then walked westbound on 162nd Street and when he noticed that defendant was walking behind him, Washington made a "maneuver" so that defendant would be walking in front of him. After passing the car, in which Police Officer Hector Colon (who did not testify) was sitting, Washington signalled Colon with a prearranged gesture which indicated that a sale had been made. At that point defendant was walking about six feet ahead of Washington, who did not indicate in his testimony the manner in which he conveyed to Colon that defendant was the person from whom he had purchased the drugs. According to Washington, defendant was arrested by the backup team about 10 seconds after his signal to Colon. Washington then returned to Colon's car and radioed a description of the second man, whom he dubbed "JD Black and Grey V-Neck". At trial, Washington stated that he did not make a confirmatory identification of defendant.

Sergeant Kenneth South, who was a member of the backup team and one of the arresting officers testified that he and the rest of the team, including Detective Vignola, were in a marked car at 160th Street and Broadway when they received a radio transmission from Colon. As a result of the transmission, three to five minutes later they arrested defendant, who was wearing an aqua shirt with the word "Go" written across the stomach area and rust-colored pants. A search of defendant revealed neither drugs nor currency. After receiving a transmission from Washington concerning the location of the other participant, the backup team conducted a search but were unable to locate him.

Washington vouchered the tinfoil packet he had purchased, and it was later determined to contain cocaine.

Prior to trial, the Assistant District Attorney had informed the court that Sergeant South's daily activity report was missing. According to the prosecution, it had in lieu thereof turned over to the defense the daily activity report of Detective Vignola, which, it asserted, was necessarily the equivalent of South's report since the officers had been on duty together all that day. At trial, South confirmed that his report was missing and explained that the report was "a form used to account for every minute of your working tour, where you go, who you're with, time you got there, the vehicle you went in,

and any arrests you made." The most important respect in which this report differed from other paper work was that the exact timing of particular incidents could be ascertained from this report. At the charge conference after trial, the court stated that it would not charge the jury that it was entitled to draw a negative inference from the fact that the report was missing, as it found the report to be "immaterial." Defense counsel's objection was overruled.

■ Since we find that the trial court erred in refusing to impose any sanction for the loss of the daily activity report, which clearly constituted *Rosario* material, a reversal is required.

Where the prosecution fails to exercise due care in preserving *Rosario* material, and defendant is prejudiced thereby, "the court must impose an appropriate sanction" *(People v Martinez,* 71 NY2d 937, 940). Among the factors which the court may consider in determining an appropriate sanction are the "proof available at trial, the significance of the missing evidence and whether the loss was intentional or inadvertent" *(People v Haupt,* 71 NY2d 929, 931).

■ The prosecution's contention that this issue is not preserved for review is not borne out by the record. While it is not clear that defense counsel explicitly requested a sanction before the court ruled that it would not deliver an adverse inference charge, once the court made that decision, counsel immediately responded with an argument that the document was material and relevant. Under these circumstances, the claim that the report was material and that an adverse inference charge should have been delivered are clearly preserved for our review.

■ While there is no contention by the defense that the loss of South's daily activity report was intentional, even its inadvertent loss constitutes a breach of the prosecution's obligation to preserve *Rosario* materials pending trial *(People v Martinez, supra,* at 940; *People v Boyne,* 174 AD2d 103, 109) and warrants some sanction if the defendant suffered prejudice thereby. In determining whether prejudice has occurred where a document is lost or missing, it is frequently the case, as here, that neither the document's actual contents nor how it would have related to the defense can be ascertained with precision. *(See, e.g., People v Wallace,* 76 NY2d 953; *People v Haupt, supra.)* Therefore, in determining whether a sanction was warranted we must in the first instance consider the type

of document that was lost, the type of information that it was likely to contain and its relationship to the issues at trial.

In this case, the defendant persuasively points to several ways in which the type of information usually contained in an arresting officer's daily activity report could have been used by the defense.

It is argued that the report would have been of significance with respect to the length of time that elapsed between the transmission from Officer Colon to the backup team and defendant's arrest. Sergeant South's testimony that there was a three-to-five-minute gap between the transmission and the arrest was inconsistent with the testimony by Washington, the undercover officer, that he had never lost sight of the defendant, who, he claimed, was arrested 10 seconds after the transmission. This aspect of Washington's testimony was very important since there were certain gaps in the testimony concerning the chain of events which led to defendant's arrest, including how Washington pointed out the seller to Colon and the substance of what Colon observed before he made his transmission to South. According to South's testimony, the precise times at which different events occurred is exactly the type of information which the daily activity report could be expected to reflect.

The fact that South's testimony of a three-to-five-minute gap may have actually been helpful to the defense, as argued by the People, does not vitiate the *Rosario* violation. As has repeatedly been noted since the seminal case of *People v Rosario* (9 NY2d 286, 289, *cert denied* 368 US 866), "As long as the statement relates to the subject matter of the witness' testimony and contains nothing that must be kept confidential, defense counsel should be allowed to determine for themselves the use to be made of it on cross-examination."

That the report here related to issues which were of substantial significance at trial, is further emphasized by the fact that the evidence at trial was not free from some question concerning the identification of defendant as the seller since there was no evidence that Washington had made a station house confirmatory identification of the defendant on the day of his arrest and his courtroom identification of defendant as the seller occurred two years after the arrest. The daily activity report of South, one of the arresting officers, would certainly have been relevant on the identification issue and could well have provided counsel with useful impeachment material.

Moreover, another area of inquiry that would have been fruitful for the defense was the fact that Washington had made other drug purchases that day, which could support an argument that the tinfoil which was identified as having been purchased from defendant was, in fact, obtained at another time and was mistakenly identified as having been purchased from defendant. By the time of trial, Washington could no longer recall the type of drugs he had purchased elsewhere that day and the only evidence on this issue came from Sergeant South, the backup, who stated that the only other purchase by Washington had been of vials of crack, not of tinfoils. The defense cogently argues that South's daily activity report for the day would in all probability have contained information relevant to this inquiry.

On this record, therefore, it must be concluded that significant prejudice to the defense was precipitated by the loss of this report. Since the imposition of a sanction has been approved for a *Rosario* violation even where the likelihood of prejudice is minimal *(see, Matter of Christian M.,* 155 AD2d 305, *lv denied* 75 NY2d 706; *see also, People v Kelly,* 62 NY2d 516), a sanction was certainly warranted in the instant case.

The prosecution argues that we should find that it was adequately sanctioned by its voluntarily turning over the daily activity report of Detective Vignola, which it was not required to do, and by the defense being permitted to explore the loss of the report on cross-examination of Sergeant South and mentioning it in summation. We do not agree that either of these constituted an appropriate sanction. While a direction that the prosecution turn over documents to which the defense would otherwise not be entitled has been imposed as a sanction under certain circumstances *(see, People v [Frankie] Valle,* 143 AD2d 160), the voluntary handing over of a document which the prosecution itself has selected from its file and which it admits contains no information relevant to defendant's arrest can hardly be characterized as a "sanction", particularly since there was no indication that the reports of the two officers contained the same information. Indeed, it is highly likely that they did not contain identical information since the very purpose of a "daily activity report" is "to account for every minute" of the *particular* officer's working tour. As was early observed in *People v Rosario (supra,* at 289) even statements seemingly in harmony with the witness' court testimony "may contain matter which will prove helpful on cross-examination. They may reflect a wit-

ness' bias, for instance, or otherwise supply the defendant with knowledge essential to the neutralization of the damaging testimony of the witness * * * Shades of meaning, stress, additions or omissions, may be found which will place the witness' answers upon direct examination in an entirely different light". Nor can we find that "allowing" counsel to explore the loss on cross-examination and mention it in summation constituted a sanction, since these were appropriate areas of inquiry which the defendant had a right to pursue in any event and which were duly countered by the prosecution.

Accordingly, in light of the potential for prejudice arising from the unavailability of the police witness' daily activity report, which constituted *Rosario* material, it was error for the court to impose no sanction at all. While we do not find that the specific sanction which the court rejected, i.e., an adverse inference charge, was the only possible way of addressing the loss of the document *(see, People v Boyne,* 174 AD2d, *supra,* at 109), it would appear to have been appropriate under the circumstances.

Judgment, Supreme Court, New York County (Budd G. Goodman, J.), rendered October 19, 1990, convicting defendant, after trial by jury, of criminal sale of a controlled substance in the third degree and sentencing him to 5 to 10 years in prison, reversed, on the law, and the matter remanded for a new trial.

ROSENBERGER, J. P., KUPFERMAN and KASSAL, JJ., concur.

Judgment, Supreme Court, New York County, rendered October 19, 1990, unanimously reversed, on the law, and the matter remanded for a new trial.