*524 OPINION OF THE COURT
James A. Yates, J.
William Bagley is charged with possession of marihuana discovered by the police when the taxicab in which he was a passenger was stopped in the late evening of August 4, 1998 at 153rd Street and Henry Hudson Parkway. Discovery is complete in this case and a date certain has been scheduled for pretrial hearings and trial. In anticipation of the proceedings, the defendant has served the New York City Police Department (NYPD) with a subpoena demanding production of certain records regarding the activities, on the night in question, of two specified officers, each of whom participated in the stop, search and arrest. In particular, the subpoena calls for records “concerning the stopping and/or searching of any and all automobiles on August 4, 1998, on West 153rd Street and Henry Hudson Parkway, conducted by the police officers involved in the arrest of the defendant, including but not limited to Lt. Pappas and P.O. Turgensen” which relate “to the stopping and/or searching of vehicles in New York County on August .4, 1998 at West 153rd Street and Henry Hudson Parkway.”
The NYPD has moved to quash the subpoena. The Department argues that some of the materials are discoverable, as Rosario or Brady material, and may not, therefore, be subpoenaed by the defendant outside the discovery process prescribed in CPL article 240. Further, to the extent that other records sought are not obtainable by discovery, because they do not constitute Rosario or Brady material, the Department argues that they may not be subpoenaed in advance of trial because a defendant is barred from acquiring police reports which are not turned over by the prosecution as part of the discovery process. Movant, in effect, advances a “Catch 22” argument — items that are discoverable should be obtained from the prosecutor and cannot be subpoenaed while items that are not discoverable are exempt from the subpoena process, ergo police reports cannot be subpoenaed in advance of trial. It is NYPD’s position that the prosecution is entitled to the records to prepare for trial but that a court, acting on behalf of a defendant, may not compel production of police records for use at trial otherwise. In sum, movant argues that the only police records available to the court or a defendant are Rosario or Brady materials as they are disclosed by the People at trial unless the People elect to introduce other police records in their possession in support of prosecution.
*525 CPL Article 240 Does Not Prohibit Issuance of a Subpoena to NYPD
The right of compulsory process is a fundamental right guaranteed by our Federal and State Constitutions and by statute. The ability to compel the production of evidence is “essential to the very existence of a court of justice in any civilized community” (Matter of Makames, 238 App Div 534, 536 [4th Dept 1933]). Free exercise of that right is not, and was not intended to be, circumscribed by enactment of CPL article 240. The right to subpoena material from a nonparty, by authority of CPL article 610, is separate and independent of the right to obtain discovery from an opposing party pursuant to article 240. (People v Burnette, 160 Misc 2d 1005 [Sup Ct, NY County 1994]; People v Jovanovic, 176 Misc 2d 729 [Sup Ct, NY County 1997]; People v Cabon, 148 Misc 2d 260 [Crim Ct, NY County 1990]; People v Davis, 169 Misc 2d 977 [Westchester County Ct 1996].) Movant is not a party to the proceeding and does not contend otherwise. As such, a subpoena may properly be issued to the NYPD or its officers and employees.
Movant contends that a subpoena may not issue to NYPD for materials in its possession if the People have a duty to disclose the same or similar information. In effect, movant would deny defendant and the court the power to assure, independent of the prosecutor’s Rosario and Brady obligations, that relevant and material items are preserved for, and produced at, trial. Movant argues that a defendant is required to accept material, passively, from the People and is without power to gather and preserve evidence on his own behalf. Further, movant advances the somewhat strained argument that relief provided by People v Ranghelle (69 NY2d 56 [1986]) and its progeny (People v Martinez, 71 NY2d 937 [1988]; People v Jackson, 78 NY2d 638 [1991]) is available if the People fail to meet their Rosario obligation and that the availability of that remedy precludes independent production of the same material. Thus, movant concludes that a defendant cannot produce relevant and material evidence at trial on his own, but should instead seek Ranghelle or Jackson relief after trial if the People fail to do so. This makes little sense and cannot have been intended by the Legislature. Anyone familiar with daily practice in Criminal Term has seen frequent occasions when materials are lost, destroyed or inadequately preserved or otherwise not produced at trial. As just one, but common, example, it is well known that “911” tapes are overwritten after a short period of time, usually 90 days. On too many occa *526 sions, this court and others have been asked to accept a computerized “Sprint” summary in lieu of the lost tape. The same may be said for activity logs, photo arrays, memo books and a host of other materials which it is this court’s sad duty to report have, on not infrequent occasion, been inadequately preserved. If one were to accept movant’s argument, a subpoena summoning the tape, the memo book, the photo array, etc., for use at trial would be impermissible. The defendant, the court and the jury would be denied access to direct and readily available evidence because, in movant’s view, only the People may call for its production.
On the other hand, the Court of Appeals has decided that a defendant’s failure to issue a subpoena for discoverable items in reliance upon an expectation of later disclosure by the prosecutor is a mistake committed at the defendant’s peril. In People v Colavito (87 NY2d 423 [1996]), the defendant complained that money orders were introduced as evidence at his larceny trial without prior disclosure. (He had, to his detriment, relied upon an unfulfilled promise by the prosecutor to voluntarily disclose the items in advance of trial.) Judge Bellacosa, writing for the Court, noted that, although the defendant could have moved for court-ordered disclosure pursuant to CPL 240.20, as well, he should have moved for a subpoena, citing CPL 610.20 (3). (Supra, at 428.) The Court denied the appeal, condemning defense counsel’s “lack of initiative.” (Supra, at 428.) Not only did the Court feel that a subpoena was appropriate and authorized as an auxiliary way of obtaining discoverable materials, it found a fault in the defendant’s failure to pursue a subpoena.
By its own terms, the plain language of CPL 610.20 (3) authorizes a court-ordered subpoena to “any department, bureau or agency of the state or of a political subdivision thereof’ — which includes movant. (Emphasis added.) There is no exception for police reports. The statute coexists with article 240 as a separate and independent basis for acquisition of NYPD records.
Notwithstanding the unequivocal authorization in CPL 610.20, movant would have this court read a blanket exemption for NYPD records where none exists. This is not unlike the argument advanced by movant, but rejected by the Court of Appeals, in Matter of Gould v New York City Police Dept. (89 NY2d 267 [1996]). In Gould, movant argued that CPL article 240 was intended to insulate NYPD from Freedom of Information Law (FOIL) requests (see, Public Officers Law § 87 [2] [a]), *527 when the applicant was a defendant in a criminal proceeding. The Court dismissed the argument: “We recognize that petitioners seek documents relating to their own criminal proceedings, and that disclosure of such documents is governed generally by CPL article 240 as well as the Rosario and Brady rules. However, insofar as the Criminal Procedure Law does not specifically preclude defendants from seeking these documents under FOIL, we cannot read such a categorical limitation into the statute.” (Supra, at 274.)
The dissent in Gould (supra) argued, as does movant here, that NYPD records should be handled differently because some of the records sought were discoverable under existing law. However, the argument was firmly rejected in Gould and the logic of that opinion controls here. Merely because some of the items sought by the defendant may be discoverable does not mean that they cannot, as well, be compelled by process outside the narrow limits of article 240. (See, e.g., Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 610.25, at 270 [1984 ed] [the statute provides no exemption for “material as may be found in article 240”].)
Unfortunately, movant’s view of article 610 ignores the history of the discovery articles and flips a reform, enacted in 1979, on its head. (See, L 1979, chs 412, 413, eff Sept. 1, 1979.)
Prior to the 1979 revision, article 240 contained an exemption for “(a) reports, memoranda or other internal documents or work papers made by district attorneys, police officers or other law enforcement agents, or by a defendant or his attorneys or agents, in connection with the investigation, prosecution or defense of a criminal action, and (b) records of statements made to such parties, attorneys or agents by witnesses or prospective witnesses in the case.” (CPL former 240.10 [3], repealed by L 1979, ch 412.)
As such, article 240, prior to the 1979 reform, expressly prohibited court-ordered disclosure of exempt property. (CPL former 240.20, repealed by L 1979, ch 412; see, Matter of Morgenthau v Hopes, 55 AD2d 255 [1st Dept 1977].) Nonetheless, such material could be subpoenaed for use at trial if relevant, material and not privileged. (People v Gissendanner, 48 NY2d 543, 551 [1979].) The reform amendments in 1979 eliminated the definition of “exempt property” and repealed the prohibition against discovery of police reports, overriding Hopes upon which movant mistakenly relies. After 1979, article 240 no longer prohibited discovery of police reports. At the same time, no change was made to article 610 to alter or limit the preexisting *528 authority, explained in Gissendanner, to subpoena a police report.
In a call for judicial activism, movant would have this court write an exemption into article 610, where none exists and find an implied prohibition in article 240 in the face of its purposeful removal by the Legislature in the 1979 reform. A plain reading of the revised language shows that there is no preclusion of subpoenas for police reports and the court declines the invitation to judicially create an exemption neither contained in the statute nor supported by legislative history.
Subpoena Power is Not Confined to Discoverable Items
As well, movant argues that a subpoena may not issue for police reports which are not discoverable as Rosario or Brady materials. So, for example, in movant’s view, if the People choose to call only one of two arresting officers, reports filed by the other would be unavailable for inspection because they are not Rosario material. The court does not agree.
There is no prohibition in article 610 against production at trial of witnesses or writings merely because the item is not discoverable pretrial. As a matter of common sense and common practice, parties to a criminal case routinely subpoena materials for inspection in advance of trial which are not part of disclosure made by the opposing party. On an everyday basis prosecutors and defense counsel seek employment records (People v Grosunor, 108 Misc 2d 932 [Crim Ct, Bronx County 1981]), school records and hospital records (People v Carkner, 213 AD2d 735 [3d Dept 1995], lv denied 85 NY2d 970, 86 NY2d 733 [1995]), laboratory records (People v Mack, 86 Misc 2d 364 [Sup Ct, Westchester County 1976]), psychiatric records (People v Morris, 153 AD2d 984, lv denied 75 NY2d 922 [1990]), library records and Family Court records (Matter of Roman, 97 Misc 2d 782 [Sup Ct, NY County 1979]), parole records (Calcione v New York State Bd. of Parole, 49 AD2d 924 [2d Dept 1975]), and probation records and Department of Correctional Services records (People v Doe, 170 Misc 2d 454 [Sup Ct, Monroe County 1996]) — to name a few. Absent a validly interposed motion to quash on grounds of oppression, burden or privilege there is no logical reason to put material evidence outside the reach of the prosecution or the defendant. In the case before the court, the NYPD has not moved to quash the subpoena on a claim of privilege, burden or oppression. Nor has NYPD or the People asserted potential harassment, embarrassment or intimidation of witnesses — which would serve as grounds for delayed or denied disclosure if justifiably raised. (CPL 240.50.)
*529 The history of the recodification of article 240 and the contemporaneous amendment to article 610 evince a legislative intent to authorize and encourage the use of a subpoena where discovery from an opposing party falls short. Prior to 1979, exchange of materials between the parties relied upon motion practice, necessitating court intervention for routine disclosure. The 1979 amendments created a system of demand disclosure and direct exchange between the parties — significantly reducing the need for applications to a court for relief. The Office of Court Administration sponsored the legislation, and in a letter to Richard A. Brown, Counsel to Governor Carey, urging approval of the legislation explained,
“The measure is designed to broaden criminal discovery * * *
“The basic approach of the measure is to enlarge discovery, under its own name, and to permit both sides to obtain discovery of routine material upon demand, that is, without a court order.” (Letter to Governor’s Counsel Richard A. Brown, dated June 26, 1979, Bill Jacket, L 1979, ch 412.)
Rules governing disclosure from opposing parties (art 240), bills of particulars (art 200) and subpoenas (art 610) were all part of one reform package designed to expand, not restrict, access to information in advance of trial. Upon signing the two measures into law, Governor Carey proclaimed:
“These bills (1) provide expanded discovery for both the defense and prosecution in criminal cases, including, for the first time, a procedure for discovery on demand rather than on motion and court order; and (2) clarify the right of a defendant to obtain information necessary to prepare his defense by way of a bill of particulars and the right of the court to grant the issuing party an opportunity to inspect evidence subpoenaed prior to trial * * *
“The element of surprise in criminal trials, and its inherent unfairness, will be reduced.” (Governor’s Mem approving L 1979, ch 412, 1979 McKinney’s Session Laws of NY, at 1801.)
As the Governor explained, the accompanying amendment to GPL 610.25 permitted an early return date for subpoenaed materials, before the actual date set for hearing or trial. Prior to the 1979 reform a court could not compel production of materials in advance of the criminal proceeding itself. This defect in the statute would lead to a cumbersome procedure *530 whereby a simple adjournment prior to trial would require cancellation of a subpoena and return of the material produced, without affording the parties a reasonable opportunity to inspect the materials. (See, e.g., People v Hasson, 86 Misc 2d 781 [1976].) The 1979 amendment to CPL 610.25 specifically overruled this aspect of cases like Hasson by providing that a subpoena could direct production “prior to trial” and that the court had the discretion to provide the issuing party with a “reasonable opportunity to inspect such evidence.” (CPL 610.25 [2].) As Judge Bellacosa explained in the Practice Commentary accompanying CPL 610.25, the amendment was designed to “foster early availability of evidence to reduce surprise and gamesmanship” and is a “valuable tool especially with respect to matters of volume and complexity which might otherwise only cause delay if first popped up at trial.” (Bellacosa, Practice Commentary, op. cit., at 270.)
Movant, here, complains that if the defendant is permitted to inspect subpoenaed police records prior to trial this would constitute an impermissible “end run” around the discovery chapter. However, merely because a party has a fair opportunity to prepare for trial by reviewing subpoenaed materials in advance, one should not conclude that such preparation runs counter to legislative expectation. As noted, the Governor’s memorandum anticipated that the parties would inspect materials in advance of trial to better prepare.
Prior to signing chapter 413 into law, Governor Carey, by his Counsel Richard Brown, solicited comments from various prosecutors. One, Charles J. Hynes, then Deputy Attorney General and Special Prosecutor for Nursing Homes, Health and Social Services, complained that early inspection of subpoenaed materials was “a dangerous * * * effort to circumvent the traditional bounds of criminal discovery.” (Letter to Governor’s Counsel Richard A. Brown, dated June 25, 1979, Bill Jacket, L 1979, ch 413.) However, not all prosecutors agreed. Roderick C. Lankier, Office of the Special Prosecutor, by Michael Shapiro, Special Assistant Attorney General, urged approval on the ground that “[c]learly, where the volume and/or complexity of subpoenaed records would necessarily cause trial delay in order that the record be examined, this legislation serves a salutary purpose.” (Letter to Governor’s Counsel Richard A. Brown, dated June 26, 1979, Bill Jacket, L 1979, ch 413.) Similarly, Thomas R. Sullivan, District Attorney, Richmond County, wrote, “There is another provision of this bill which provides for the obtaining of property by subpoena *531 duces tecum for trial prior to the actual date of trial and for its inspection prior to trial. This should do much to speed up the trial process.” (Memo to Governor’s Counsel Richard A. Brown, dated June 25, 1979, Bill Jacket, L 1979, ch 413.)
It was apparent to those who participated in the passage of the reforms that the combined effect of the amendment to article 610 permitting early inspection, coupled with the repeal of the prohibition against disclosure of police reports as “exempt property” in article 240, would inexorably permit subpoenas for nonprivileged police reports in advance of trial. Nonetheless, over objections that this would allow the parties to “circumvent the traditional bounds of criminal discovery,” the bills were signed into law.
In sum, the argument raised by movant was made to, and rejected by, the Legislature and the Governor more than 20 years ago. The 1979 revisions raised the floor, mandating quick access to an expanded variety of materials. It did not create a ceiling preventing access to materials which are not turned over by the opposing party in the discovery process. Any such purported ceiling would be counterproductive, denying prosecutors and defendants alike inspection of voluminous agency records necessary to the prosecution and defense of criminal actions.
Defendant Bagley’s Subpoena, as Modified, is Timely and Proper
GPL 610.20 (3) provides that a court may issue a subpoena duces tecum on behalf of a defendant “pursuant to the rules applicable to civil cases as provided in section twenty-three hundred seven of the civil practice law and rules.” The petitioner has moved to quash the subpoena upon the grounds previously stated, that the subpoena is an “end run” around discovery, and, as well, on a claim that the subpoena is a “fishing expedition” for “impeachment material.” Movant proceeds to argue that impeachment material may not be subpoenaed and that the only right to such material “is under the umbrella of Brady.” However, the subpoena is for production at trial and is not merely being used as a discovery device in anticipation of trial.
Furthermore, movant misreads Gissendanner (48 NY2d 543, supra) in four respects: First, movant would have this court expand the qualified privilege accorded personnel records to all other police records. Second, Gissendanner does not prevent access to “impeachment” materials. Third, the records sought in *532 this case are those which reflect the arresting officers’ conduct at the time and place in question, which means that the records bear directly on material issues in the case and are not collateral.[1] Finally, movant asserts that this court has no discretion to issue a subpoena and disclose matters which pertain generally to a witness’ credibility when, in fact, the Court of Appeals ruled that this is a matter left to “the exercise of a sound discretion by the trial court.” (Supra, at 548.)
The first claim — that all police records should be treated as privileged matters requiring a prior demonstration of materiality — adds a requirement that is not to be found in either Gissendanner (supra) or article 610. Gissendanner teaches that a court must grant access to records which are “relevant and material” notwithstanding a claim of privilege. (Supra, at 548.) The “materiality” requirement of Gissendanner arose because the materials sought were confidential personnel records which were accorded a limited privilege by that Court. Section 50-a of the Civil Rights Law was enacted after the application for a subpoena in Gissendanner, but before the decision in the Court of Appeals (L 1976, ch 413, eff June 21, 1976). The Gissendanner Court was of the opinion that the statute was in general in conformity with “judicial consensus” on that issue regarding “confidential” personnel files. (People v Gissendanner, 48 NY2d, at 551.) Gissendanner accepted the recently enacted legislative proscription and applied it to a case which arose prior to its enactment. However, Gissendanner and section 50-a apply to privileged personnel records. On the other hand, unlike Civil Rights Law § 50-a, article 610 does not, by its own terms, employ the phrase — there is no mention or requirement of a prior materiality determination before issuance of a subpoena for nonprivileged matters in the statute. A plain reading of the two statutes would lead to the obvious conclusion that the Legislature intended what it said — a defendant must demonstrate materiality in order to obtain personnel records but is not required to demonstrate materiality when seeking non-privileged records.
*533 Neither the statute nor Gissendanner (supra) applies to subpoenas, such as the one before this court, which do not reach for personnel files.[2] In cases not involving a privilege, or even a qualified privilege, the standard is much more forgiving. “All that is required under the State and Federal Constitutions is that the subpoenaed materials be relevant to the investigation being conducted and that the subpoena not be over broad or unreasonably burdensome.” (Matter of Hynes v Moskowitz, 44 NY2d 383, 394; Myerson v Lentini Bros. Moving & Stor. Co., 33 NY2d 250; In re Horowitz, 482 F2d 72, 75-79, cert denied 414 US 867 [1973].)
In any event, even under the more exacting standard of review mandated by Gissendanner (supra) and the Civil Rights Law, the records sought by the defendant should be produced for court inspection. Section 50-a establishes two standards that must be met to justify disclosure of a police officer’s personnel file. First, there must be a “clear showing of facts sufficient to warrant the judge to request records for review,” and then the court must “make a determination as to whether the records are relevant and material in the action before him.” (Civil Rights Law § 50-a [2], [3].)
At the hearing in the case before the court the officers, of necessity, will testify about their activities at that time and place of, and the reasons for, the stop and search of the defendant. Records of the arresting officers’ activities at the time and place of arrest are unarguably germane to the issue of their motivation for defendant’s arrest as well as the propriety of their actions. It is clear that they contain “pertinent information” (Cox v New York City Hous. Auth., 105 AD2d 663, 664), and it is “reasonably likely” (People v Gissendanner, supra, at 550) they are relevant and material to the issues before the court. Merely because defendant cannot aver in advance of review specifically what they contain does not render the conclusion less likely.
As to the claim that the materials may not be subpoenaed if their intended use is for “impeachment” — the argument was soundly rejected in Gissendanner (supra). In that case, a subpoena was sought for police personnel records unconnected to the case at hand. The applicant wanted to search the rec *534 ords in hope of finding damaging material as to a witness’ general character. The police department opposed the subpoena on two grounds: claiming a qualified privilege for personnel records and claiming that mere impeachment material was not “evidence” which could be subpoenaed. The Court disagreed allowing that a subpoena could issue for material not only showing bias, motive or hostility or which was directly exculpatory, but also for matters which brought into question the credibility or reliability of a witness. The Court held that records must be ordered, even over a claim of qualified privilege, “when a request for access is directed toward revealing specific ‘biases, prejudices or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand’ * * * or when it involves other information which, if known to the trier of fact, could very well affect the outcome of the trial * * * [however] there is no such compulsion when requests to examine records are motivated by nothing more than impeachment of witnesses’ general credibility. In such cases, the defendant’s rights have generally been canalized within the bounds of the traditional evidentiary rule that governs the introduction of extrinsic proof of matters collateral to the issues at trial, i.e., its availability rests largely on the exercise of a sound discretion by the trial court.” (People v Gissendanner, 48 NY2d 543, 548.)
As can be seen, the Court did accept the argument that police personnel records should enjoy a limited and qualified privilege. However, even in the case of privileged personnel records, the Court was careful to distinguish matter which might bear directly on the case, i.e., writings which record the events at issue or which might demonstrate motive, hostility, bias or disclose some other exculpatory information, from other matters bearing only on unrelated prior misconduct which might call into question the officer’s general credibility. In the case of the former, a trial court has no discretion but to issue the subpoena and no privilege exists. In the case of the latter, the Court was careful to assign this as a matter of discretion, best left to trial courts depending upon the circumstances of the case. Movant glosses over the holding in Gissendanner (supra) and mistakenly combines all material which is not directly probative of innocence into one broad, condemned category of “impeachment material” without recognizing the critical distinction, drawn by the Court of Appeals, between general character evidence and other material which directly calls into question the anticipated testimony of the officers.
*535 Accordingly, even under the more stringent review accorded privileged matters, by Gissendanner (supra) and section 50-a, the court would be required to sign the subpoenas for in camera inspection — giving movant and the People an opportunity to move for an appropriate redaction. The defendant contends that his arrest was illegal and expects the documents in question to support his claim. Writings documenting the officers’ activities and the instructions they were given with regard to the search at the particular time and place in question are material and relevant to a probable cause determination.
Courts on occasion cite Gissendanner (supra) for the proposition that a subpoena may issue to obtain “evidence” but not information which might lead to evidence. (See, e.g., People v Morrison, 148 Misc 2d 61, 67 [Crim Ct, NY County 1990] [“The right to compel material pursuant to subpoena is, therefore, limited to the compulsion of ‘evidence’ and is not a right to compel the production of documents that refer to evidence or that provide leads that will assist in the identification of evidence”].) To be sure, Gissendanner condemned a “fishing expedition” when calling for personnel records. Gissendanner stands for the proposition that “a subpoena duces tecum may not be used for the purpose of discovery or to ascertain the existence of evidence.” (Supra, at 551.) But Gissendanner did not require a party to swear in advance of production that the entire record would be admitted into evidence at trial. Obviously, no party could know in advance of trial and in advance of seeing the item, whether all or parts of a set of documents would be offered or even accepted into evidence. How, for example, could a court rule on whether a prior writing would be admissible as a prior inconsistent statement before the court has seen the document or heard testimony contrary to the statement? It is impractical and improvident to delay an application to obtain a writing which is potentially material and relevant until after a witness has already testified merely because it has not yet been offered and accepted as “evidence” at trial. Such a procedure surely puts the cart before the horse. The reference in article 610 to production of “evidence” has a practical and commonsense meaning — the item should be produced if it has the good-faith potential to be admitted as evidence. “If there is any possibility that the information is sought in good faith for possible use as evidence-in-chief or in rebuttal or for cross-examination, it should be considered ‘evidence material * * * in the prosecution or defense.’” (Former 3 Weinstein-Korn-Miller, NY Civ Prac if 3101.07, cited with ap *536 proval in Matter of Comstock, 21 AD2d 843, 844 [4th Dept 1964], and Allen v Crowell-Collier Publ. Co., 21 NY2d 403, 406 [1968].)
CPL 610.20 (3) commands that a “subpoena duces tecum may be issued in behalf of a defendant upon order of a court pursuant to the rules applicable to civil cases as provided in section twenty-three hundred seven of the civil practice law and rules.” While the statute authorizes production of “evidence” it does not contain a reference to materiality. Nonetheless, if one were to adopt movant’s argument that the statute contains a materiality requirement by implication, there are two correlative statutes which contain the phrase “material and necessary.” There exists, therefore, a body of law defining the boundaries of those terms. In this context, the issue of what constitutes “evidence” which may be “material and necessary” has been litigated and resolved. CPLR 3101 (a) commands that there be “full disclosure of all matter material and necessary in the prosecution or defense of an action;”[3] “The words, ‘material and necessary’, are, in our view, to be interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity. The test is one of usefulness and reason. CPLR 3101 (subd. [a]) should be construed, as the leading text on practice puts it, to permit discovery of testimony ‘which is sufficiently related to the issues in litigation to make the effort to obtain it in preparation for trial reasonable’ (3 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 3101.07, p. 31-13).” (Allen v Crowell-Collier Publ. Co., 21 NY2d 403, 406 [1968], supra.)
As well, the Criminal Procedure Law uses the phrase “material and necessary,” but in another context. The phrase is used in CPL 640.10 as a prerequisite to issuance of a subpoena compelling production of a witness who is not in New York. Obviously, the Legislature intended to require more caution, with a greater showing of particularity and necessity, before a request would be made for assistance by officers of another State in bringing a reluctant witness here. The Court of Appeals has *537 reserved decision on whether the phrase “material and necessary” in CPL 640.10 is “intended to be applied as broadly and flexibly as the same phrase is now used in connection with civil discovery pursuant to CPLR 3101.” (Matter of Codey [Capital Cities, Am. Broadcasting Corp.], 82 NY2d 521, 529, n 2 [1993].) However, even in the more restrictive setting of a CPL 640.10 subpoena, the Appellate Division, First Department, has held that a subpoena should issue when there is a “logical relationship” between the items sought (in this case videotapes and out-takes held by a broadcaster) and the issues to be resolved at the hearing or trial. (Matter of Magrino, 226 AD2d 218 [1st Dept 1996].) As well, in Magrino, the applicant for the subpoena did not, and could not, know precisely what the out-takes contained. Nonetheless, the appeals court held that it was sufficiently “likely” that the out-takes would contain material and necessary evidence without further prerequisite showing.
In sum, the subpoena, calling for reports detailing the activities of the arresting officers at the time and place of the search, seeks evidence which is not only relevant, but also material, to the hearing and trial. Accordingly, the motion to quash should be denied. Movant is directed to comply with the subpoena to the extent that it calls for records concerning the stopping and/or searching of automobiles at West 153rd Street and Henry Hudson Parkway on the evening of August 4, 1998 by police officers involved in the arrest of defendant. As well, movant shall comply with the subpoena to the extent that it calls for production of any written instructions given the arresting officers regarding their conduct at the time and place of the stop and search.
[Portions of opinion omitted for purposes of publication.]

. As previously indicated, the present case involves the stop of a taxicab in which Mr. Bagley was a passenger. The Court of Appeals recently reviewed procedures regarding stops of taxicabs. (People v Boswell, 94 NY2d 136 [1999].) The Court, in Boswell, looked for “written guidelines” (at 140) regarding the procedures governing the stops in question and, as well, looked for “written record[s] of the stops they had made” (at 141) at the location. Movant wishes to put before the court the same reports, or absence of reports, relied upon by the Court of Appeals in Boswell.

. Similarly, in Matter of Terry D. (81 NY2d 1042 [1993]), the applicant sought private records of students which enjoyed protection under Education Law § 3212 and under Federal law (20 USC § 1232g). Since the statutes created a qualified privilege, it was appropriate to demand a showing that the information was material and relevant to the proceedings.

. It could be argued that the phrase “material and necessary has different meanings in different settings, criminal court and civil court. However, the Criminal Procedure Law specifically cross references the Civil Practice Law and Rules in this area — calling for consistent definitions and procedures. As well, the court cannot ignore the fact that the CPL does not require a showing of materiality or necessity. If such a showing is to be engrafted by implication from the CPLR, it defies logic to transplant the term from one law to the other without consistent or consonant interpretation.