THE PEOPLE OF THE STATE OF NEW YORK ex rel. JAMES A. GARRITY, Appellant, *v.* WILLIAM A. WALSH, City Judge of Yonkers, Respondent.

Second Department, December 21, 1917.

Court — municipal corporations — city judge of Yonkers is city officer — vacancy in said office may be filled by appointment by mayor — city judge, although appointed, not elected, may remove probation officer — removal of veteran fireman from said office must be on charges and after hearing.

The city judge of the city of Yonkers is a city, not a State officer, and the mayor of said city, not the Governor of the State, has the power to fill a vacancy in said office by appointment.

A city judge of the city of Yonkers, although appointed to fill a vacancy and not elected by the people, has power to appoint probation officers.

But where a veteran volunteer fireman has been appointed to the position of chief probation officer of the Court of Special Sessions in the city of Yonkers, as said position is classified in the competitive class by the municipal civil service commission with the approval of the mayor and of the State Civil Service Commission, said probation officer cannot be removed without charges and without a hearing at the pleasure of the city judge.

APPEAL by the relator, James A. Garrity, from an order of the Supreme Court, made at the Westchester Special Term and entered in the office of the clerk of the county of Westchester on the 28th day of August, 1917, denying his application for a peremptory writ of mandamus.

*Ralph Earl Prime, Jr.,* for the appellant.

*George V. Wallin,* for the respondent.

THOMAS, J.:

The appellant was appointed in 1909 chief probation officer by the city judge of Yonkers, and was removed in 1917 by the defendant, who, by reason of a vacancy in the office of city judge of the City Court of Yonkers, had been appointed to that position by the mayor of the city of Yonkers. Appellant contends (1) that the city judge is not an officer of the city of Yonkers, and, therefore, the mayor had no power to appoint Walsh to the vacancy, but that the appointment rests with the Governor; (2) that if Walsh was city judge, it was by appointment, and that appellant could be removed only by a "city judge elected;" (3) that appellant had been a volunteer fireman appointed to the position of chief probation officer of the Court of Special Sessions, a position classified in the competitive class of the civil service by the municipal civil service commission, which classification was approved by the mayor, and by the State Civil Service Commission, and that he was removed without charges, or facts justifying charges, and without hearing. The appellant urges that the City Court of Yonkers and the Court of Special Sessions are not courts of the city, but are inferior local courts of the State of New York, and that the city judge who presides in such courts is not a city officer. Chapter 452 of the Laws of 1908 is "An act to supplement the general laws relating to the government of the city of Yonkers, and to revise and consol-·idate the local laws relating thereto." It continues "The city of Yonkers," sets its bounds and bounds its wards, describes the powers of the common council, and contains the provisions appropriate to the charter of a city. Article 2, section 1, provides: "There shall be elected by the qualified electors of the city, in addition to such other officers as are or may be provided by law, a city judge and four justices of the peace. The term of office of the city judge shall be six years and the term of the justices of the peace shall be four years. The city judge and the four justices of the peace now in office shall continue in office for the remainder of the

terms for which they were respectively elected. The city judge shall be an attorney of the Supreme Court of the State of New York, and shall be and continue a resident of the city of Yonkers during his term of office." Section 4 (Art. 2) provides: "Any elective officer, except city judge and justices of the peace, may be removed from office for misconduct or malversation in office by the Governor in the same manner as sheriffs." Then the section provides that justices of the peace may be removed for cause in the same manner as are justices of the peace of towns; that a supervisor or an assessor may be removed for misconduct by the common council, and adds: "Nothing herein shall restrict the right of removal otherwise vested in any board or officer of the city, but the powers herein conferred shall be additional to any such other provisions for removal." Article 13 provides for a "department of the judiciary." Section 1 thereof declares that "The court of criminal jurisdiction now existing in the city of Yonkers, known as the Court of Special Sessions, is hereby continued," with the powers of such courts and further powers "hereinafter provided," and then this: "The city judge of Yonkers shall be the judge of the City Court of Yonkers and also judge of the Court of Special Sessions, and as judge of said Court of Special Sessions shall have jurisdiction, exclusive of any justice of the peace, within the corporate limits of the city, to issue all criminal process, and all process other than in civil actions." Section 2 defines the exclusive jurisdiction of the city judge to try offenses, and provides: "The city judge *elected* may appoint such number of clerks, stenographers, interpreters, assistants, and other attendants as may be prescribed by the board of estimate and apportionment. * * * All appointees of the city judge, including those in office when this act takes effect, shall hold their respective positions during the pleasure of the city judge elected," and their salary or remuneration shall be fixed by the board of estimate. Section 13 provides for designation by the mayor of "an acting city judge," and prescribes his qualifications, and when he shall serve. Section 15 deals with the powers of the city judge to impose or suspend sentence, power to release on probation under the charge of a probation officer, and then states: "The city judge

of Yonkers may appoint such number of salaried probation officers, to hold office during his pleasure, at a salary fixed by the board of estimate and apportionment as may be prescribed by the board of estimate and apportionment upon the recommendation of the city judge, and may include one or more female probation officers. The said city judge may appoint from time to time, to serve at his pleasure, and without compensation, such additional number of probation officers as he may deem desirable." Section 16 regulates the duties of the probation officer, provides for his reporting to the city judge, and ends: "Each probation officer appointed by the city judge shall perform such further duties as shall be designated or required of him by said judge." The survey of the charter should be considered in connection with the act in relation to cities of the second class. The Second Class Cities Law (Consol. Laws, chap. 53; Laws of 1909, chap. 55) provides (§ 10): "City officers, within the meaning of this chapter, include all persons elected or appointed to any office of the city created or authorized by this chapter or otherwise by law." The respondent's contention is that the words "*otherwise by law*" include the supplemental charter of Yonkers, and, therefore, the city judge for which that charter provides. Section 14 provides: "All elections of city officers, including supervisors and judicial officers of a city court or inferior local court, shall be held," etc. Section 15 is: "Vacancies. If a vacancy shall occur, otherwise than by expiration of term, in an elective office of the city, including that of supervisor, the mayor shall appoint a person to fill such vacancy." The section then provides for the duration of the term of the appointee. Appellant regards it significant that "judicial officers of a city court or inferior local court" are not mentioned, as in section 14. Perhaps it was thought that as a supervisor is usually a town officer, he should be mentioned specially. The appellant insists that the office of city judge of Yonkers was created or authorized by earlier acts, and that the supplemental charter merely declared that an already existing officer should be elected. Even so, the office of city judge of Yonkers is an "office" of the city of Yonkers "created or authorized * * * by law." There had been an office of city judge of Yonkers, recognized by earlier acts.

The supplemental charter declares that a city judge shall be elected, and careful provision is made therefor. "The city judge" then in office is continued for the remainder of his term. The city judge becomes within the city of Yonkers the judge of the Court of Special Sessions, but he does not cease to be a city judge elected as the act provides. His powers as a judge of Special Sessions are somewhat defined by section 2 of article 13, but it is said: "He shall possess such other powers and perform such other duties as now are or hereafter may be conferred or imposed by law." That refers undoubtedly to the duties and powers of the existing city judge, but I cannot believe that the city judge was lifted out of the charter as a city officer and exalted to the rank of a State officer appointable in case of vacancy by the Governor. The history of the City Court of Yonkers, indicates conclusively that the judge is an officer of the city. Chapter 866 of the Laws of 1872, repealed by the supplemental charter in question (Laws of 1908, chap. 452), is "An act to incorporate the city of Yonkers," and declares (Tit. 2, § 1): "The officers of the city shall be as follows: a mayor; a city judge;" etc. The act provides that officers of the city elected by general election "shall be a mayor and city judge," and fixes the term of the city judge, states his qualifications and jurisdiction, and provides for his removal by the County Court. It was that city judge, an officer of the city of Yonkers, who was continued in the supplementary charter. By chapter 61 of the Laws of 1873 the jurisdiction of the City Court of Yonkers was enlarged, and it was made a court of record. Its civil jurisdiction was extended, and the powers and jurisdiction of the "city judge of Yonkers" were increased. Chapter 61 of the Laws of 1873 was not directly repealed in the supplemental charter, and is probably continued by that act (Art. 14, § 2). Section 2 of the Judiciary Law (Consol. Laws, chap. 30; Laws of 1909, chap. 35; formerly Code Civ. Proc. § 2) declares that "Each of the following courts of the State is a court of record," and enumerates among others the City Court of Yonkers, but it does not say that the city judge shall be other than an officer of the city. Section 2234 of the Code of Civil Procedure mentions the city judge of Yonkers. The same Code by sections 3203-3206 provides for the civil juris-

diction of "the City Court of Yonkers." A note under these sections refers to some other scources of jurisdiction. Chapter 416 of the Laws of 1893, which I do not find directly repealed, is "An act in relation to the City Court of Yonkers." The act states the jurisdiction of the City Court of Yonkers, the powers of the city judge, makes provision for his removal by the General Term of the Second Department, and among other things deals with the subject of the clerk, marshal, the practice, jurors, trials, and provides for a stenographer of the City Court and of the Court of Special Sessions, who shall hold his office during the pleasure of the city judge. Such history indicates very clearly that the city judge is a city officer, although he existed before the supplemental charter, and that in case of vacancy he may be appointed by the mayor under the Second Class Cities Law. If the point of the learned counsel for the appellant, that the Court of Special Sessions is not a court of the city of Yonkers, be correct, it does not follow that the city judge of Yonkers, appointed by law to preside in that court, is not an officer of the city of Yonkers. A city judge is appointed to sit in the Special Sessions, and if he be an officer of the city he does not cease to be one because appointed to duty in the Special Sessions, whatever its relation to the city be. The supplemental charter does not say that the judge of the Court of Special Sessions may appoint probation officers, but that the city judge may do so. So the conclusion is reached that the city judge of Yonkers is an officer of the city, whatever may be the nature of the Court of Special Sessions in which he presides. The appellant's argument that the "city judge *elected* may appoint * * * clerks, stenographers, interpreters, assistants, and other attendants," etc., and that "all appointees of the city judge, including those in office when this act takes effect, shall hold their respective positions during the pleasure of the city judge *elected*," deserves some consideration. When a person is appointed to an office to fill a vacancy he is endowed usually with the powers that belong to the occupant of the office. The use of the word "elected" in the language quoted is obscure. It could hardly be expected that, if there were vacancies in the positions of clerks, stenographers, interpreters or assistants, the judge would not have power to fill the positions. In any case, the power to appoint

probation officers is given to the city judge of Yonkers and not to the city judge elected. The office is one that has a peculiarly confidential relation to the judge, and it would seem reasonable that he should have the power to use or disuse him as he sees fit. The position of the appellant is to the effect that he is protected by the civil service laws. The appellant had no fixed term of office. His tenure depended upon the pleasure of the city judge, who, as the statute declares, " may appoint such number of salaried probation officers, to hold office during his pleasure." In *People ex rel. McNeile* v. *Glynn* (128 App. Div. 257) it was decided that, where the statute provided that the State Comptroller shall appoint " and may at pleasure remove " a stated number of appraisers, he may remove an appraiser at will and without charges or a hearing, although he be a veteran or fireman. Since the decision in the *McNeile* case there has been decision that must be taken into account. The position of chief probation officer was, before relator's appointment, classified by the municipal civil service commission of the city of Yonkers, to which has been added the approval of the State, and the classification continues. The question arises whether the city judge is deprived of the power, which the statute gives him, by this interposition of other officials. In other words, the supplemental charter fixed the status of the probation officer, bounded his term by the pleasure of the appointing power, and the problem is whether, in exercising his right to terminate the service, the city judge must make a charge affecting the qualification of the incumbent and upon a hearing pass upon the truth of it. That would permit civil service officers to qualify the pleasure of the city judge. But chapter 15 of the Laws of 1909, as amended by chapter 264 of the Laws of 1910 (Consol. Laws, chap. 7), prescribes that a person related to the volunteer fire service, as is the relator, should not be removed from a position by appointment or employment in a city, except for incompetency or misconduct shown after a hearing upon due notice upon stated charges, and a right of review is given. In *People ex rel. Fallon* v. *Wright* (150 N. Y. 444) the court enforced a statute found to involve a similar provision, and even reversed the finding of the officer exercising the right of removal after such hearing. If it be

said that the civil service officials could not subject the relator in the present case to the civil service, the argument is met by *Matter of Simons* v. *McGuire* (204 N. Y. 253). Judge WERNER states: " The question is whether the probation officers, to be appointed by the justices of the Court of Special Sessions in the city of New York, are to be placed in the exempt class or in the competitive class under the Civil Service Law. The respondent, one of the appointees, and the justices of the Court of Special Sessions, assert that the position of probation officer is one which, by reason of its peculiar and manifold duties as defined in section 11a of the Code of Criminal Procedure, no less than by the express terms of the statute creating the Court of Special Sessions and defining the duties and powers of its officers, belongs in the exempt class." The opinion finally states: " The point in the case at bar is that we cannot hold as matter of law that the position of probation officer, under section 96, chap 659, Laws of 1910, is one which cannot be properly placed in the competitive class of the civil service, and for that reason the question must be left to the decision of the Civil Service Commission." Such section 96 of the Inferior Criminal Courts Act of the City of New York provides for the appointment and removal of probation officers, and declares: " The chief probation officers and all other probation officers shall be deemed the confidential officers of the justices and magistrates. The chief justice or the chief city magistrate, as the case may be, or a majority of the justices or a majority of each board of magistrates, may at pleasure remove the chief probation officer or any probation officer." (See, also, Laws of 1915, chap. 531, amdg. said § 96.) One object of placing the persons in the competitive class is to present persons from whom the appointing officer may make selection, being advised thereby of qualifications which he might not otherwise be able conveniently to obtain. But the governing decision is that the relator, holding a confidential office at the pleasure of the city judge, may be classified in the civil service so that the appointee cannot be removed at the pleasure of the officer appointing him, but only upon a decision after trial that the appointee is incompetent or has been guilty of misconduct, and there must be sufficient facts of record to sustain the

finding or it will be reversed and the appointee continued, although the city judge's pleasure is otherwise.

The order should be reversed and the application for writ granted, with fifty dollars costs and disbursements.

JENKS, P. J., STAPLETON, MILLS and PUTNAM, JJ., concurred.

Order reversed and application for writ granted, with fifty dollars costs and disbursements.