People v S. (2025 NY Slip Op 25130)

[*1]

People v S.

2025 NY Slip Op 25130

Decided on May 29, 2025

Justice Court Of The Village Of Piermont, Rockland County

Ruby, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on May 29, 2025
Justice Court of the Village of Piermont, Rockland County

The People of the State of New York, Plaintiff,

against
S.,[FN1] Defendant.

Case No. 24-110050

For the People 
Katherine Crispi, ADA; Rockland County District Attorney's Office; New City, NY
For the Defense 
Robert C. Zitt, Esq.; Keane & Beane, P.C., White Plains, NY

Marc R. Ruby, J.

BACKGROUND
The Defendant 
is charged with contravening NY PENAL LAW ("PL") § 130.52, [*2]Forcible touching, and PL § 260.10, Endangering the welfare of a child; both offenses are class A misdemeanors. Corresponding accusatory instruments were originally filed on, or about November 7, 2024. For reasons stated on the record, and more particularly set forth below, this Court dismissed those instruments for want of facial sufficiency. Thereafter, the superseding accusatory instruments the Defendant stands charged under (still with PL § 130.52 & § 260.10), were filed [FN2]
on, or about November 20, 2024.
On December 18, 2024, the People filed an on-calendar Certificate of Compliance ("COC") with discovery obligations set forth under CPL Art. 245, and contemporaneously stated readiness for trial ("SOR"), when queried on the record. The People's COC and SOR were qualified with a disclosure that the complainant had just recently been admitted to the Rockland Children's Psychiatric Center ("RCPC"), as a result of trauma sustained from the circumstances giving rise to this prosecution.
Shortly thereafter, on December 20, 2024, the defense applied for a subpoena duces tecum, seeking the complainant's RCPC records. The application was supported by a certification from the complainant's father, stating the complainant suffered a concussion before making allegations about the Defendant, and the injury has resulted in behavioral changes. When the People opposed the subpoena application, a hearing was scheduled for January 22, 2025. After finding an in camera review of the records was appropriate [FN3]
, this Court indorsed a subpoena, with admonishments, warnings, and protections, directing the RCPC to:
1) Notify the complainant and the complainant's parent(s)/legal guardian(s);
2) Dispatch any responsive records in an envelope marked: "Confidential material. Only to be opened by the Village Justice";
3) Note that all responsive records would remain impounded, until further order of this Court (protective, or otherwise), and that no records were be sent to the District Attorney ("DA") or defense counsel;
4) Note that any responsive records would be retained by this Court, until the conclusion of proceedings, and until any associated time to appeal has lapsed; and,
5) Have RCPC's legal counsel review any statutory privileges attached to the records, including, but not limited to: the Family Educational Rights and Privacy Act (20 USC § 1232g); individually identifiable health information pursuant to HIPAA (42 USC § 1320d et seq., as added by Pub L 104-191, 110 US Stat 1936; 45 CFR 164.502 et seq.); patient information pursuant to Public Health Law § 18; information disclosed to a physician pursuant to CPLR § 4504 (a); to a psychologist pursuant to CPLR § 4507; to a social worker pursuant to CPLR § 4508 (a); and, mental health records pursuant to Mental Hygiene Law § 33.13 (c) (emphasis added).
Upon receipt, the RCPC responded saying Mental Hygiene Law § 33.13 proscribed compliance, because the subpoena did not come from a court of record. This Court then sent the RCPC an Order vacating and rescinding the subpoena.
In issuing the subpoena, this Court recognized tensions between various provisions of the Uniform Justice Court Act ("UJCA"), the Criminal Procedure Law ("CPL"), and the Mental Hygiene Law ("MHL"). To begin, both this Court's practice, and jurisdiction, are governed by the UJCA. See UJCA § 102. And when exercising criminal jurisdiction, this Court has all of Supreme Court's powers in like proceedings except as otherwise provided by law. See UJCA § 212. Meanwhile, MHL § 33.13(c)(1) states: "clinical records or clinical information tending to identify patients or clients" "shall not be released by [regulated] facilities to any person or agency outside of the offices except" "pursuant to an order of a court of record requiring disclosure upon a finding by the court that the interests of justice significantly outweigh the need for confidentiality."
This Court is not a court of record; the Judiciary Law ("JL") is clear on this score. See JL § 2 (All courts other than those specified in this section are courts not of record). Some might argue the exclusion of justice courts from JL § 2 satisfies the "except as otherwise provided by law" clause of UJCA § 212, thereby foreclosing justice courts from ordering the release of records regulated by MHL § 33.13. Yet, on the other hand, UJCA § 2001 states justice courts have such jurisdiction of criminal matters as prescribed by the CPL, and unless otherwise specifically prescribed, practice and procedure are governed by the CPL. See UJCA § 2001(1) & (2). For its part, CPL § 610.20 vests any criminal court with broad power to issue subpoenas duces tecum. See CPL § 610.20. Since general provisions of the CPL do not override specific provisions of the UJCA, a conflict between the CPL and UJCA should be resolved in favor of the latter. People v. Lindsly, 99 AD2d 99, 103, n (2d Dept 1984). Accordingly, while MHL § 33.13, standing by itself, does not authorize a justice court to order the release of records regulated thereunder, these other statutory provisions, read holistically, certainly do not say that a justice court, exercising criminal jurisdiction, cannot exercise subpoena powers ordinarily reserved to courts of record. Much more on such jurisdictional distinctions will follow.
Explanation and Amplification
While conscious of being on the penumbras of jurisdictional and procedural powers, this Court believed there was a reasonable interpretation of the statutory constellation, where the subpoena was proper. But to the extent a competing interpretation was similarly reasonable, this Court crafted the admonishments, warnings, and protections enumerated above (including express reference to MHL § 33.13), into the subpoena. Apparently, the RCPC took note, because MHL § 33.13 was the very reason cited for not complying. And in all events, the subpoena was vacated and rescinded, and no records were ever disclosed.

Dismissal of the Initial Accusatory Instruments
As indicated, the initial accusatory instruments were dismissed without prejudice. This was because dates in supporting depositions, were at serious variance with dates in the factual portion of the instruments. At arraignment, the defense protested, and the People were not opposed to the prospect of dismissal. On balance, this Court concluded conflicting dates could have left the Defendant flummoxed in preparing a defense, while straddling inconsistencies, spanning the course of several years.
Exhibits appended to the instant motion contain characterizations of the dismissal as the Court's refusal to allow handwritten amendments to these instruments. This is correct. This Court [*3]would not let anyone, other than the averring officer (who was not present at arraignment), amend what had been filed, signed, and affirmed under penalty of perjury. Had the averring officer been present, or had the Court received an indication that the instruments would be promptly amended, the calculus would have been different. As things stood, the People were requesting a Temporary Order of Protection ("TOP"), and the Court was not keen on restricting the Defendant's liberty on the basis of facially defective charges.
In so doing, this Court was guided by the proposition that factual portions of criminal court informations must give defendants sufficient information to prepare a defense, by: 1) Stating facts of an evidentiary character which support, or tend to support the charge(s); 2) Providing reasonable cause to believe the defendant committed the offense(s); and, 3) Establishing the defendant committed every element of the offense(s), without hearsay. People v. Casey, 95 NY2d 354, 360 (2000). Otherwise, the prospect of double jeopardy looms. Id. at 363. This is why courts must consider whether dates of crimes charged can change the theory of a case. People v. Terry, 300 AD2d 1130 (4th Dept 2002).

The Contentions
After a February 19, 2025 discovery conference, the defense's instant motion followed on March 19, 2025. The People's April 16, 2025 was timely, and the Defendant put in a reply the nest day. The application seeks an order dismissing the case on Speedy Trial and Constitutional grounds, as well as in the interest of justice. In support, the defense contends the People's SOR was illusory, because the People certified compliance with CPL Art. 245 discovery obligations, without: 1) Making efforts at obtaining the complainant's psychiatric records; 2) Disclosing records from Child Protective Services ("CPS"), which were made during a "hand-in-hand", multidisciplinary investigation with the State Police, where CPS was present for the Defendant's arrest; and, 3) Disclosing additional police records, including a set of the Defendant's fingerprints, and a recorded phone call. The defense also finds it difficult to believe there are no additional State Police entries, notes, logs, and memo books.
The defense further claims a deprivation of Constitutional rights, because MHL § 33.13 only provides for courts of record to order the release of psychiatric records. Finally, the defense maintains the case should be dismissed in the interest of justice because: 1) The accusations are uncorroborated and contradicted; 2) The Defendant is a young parent, respected, employed, and without previous arrests or prosecutions; and, 3) Letting the case proceed would be a grave injustice, without any resulting benefit. 
Because of the Constitutional contention, this Court directed the defense to serve the New York State Attorney General's Office ("AG") with a copy of the motion. The defense filed corresponding proof of service, but the AG did not intervene on the State's behalf. 
In turn, the People are fully opposed, contending: 1) They are not in possession of CPS records; 2) The defense is not entitled to the complainant's psychiatric records; and, 3) All State Police records have been produced to the defense. In addition, the People cross-move to enjoin the defense from filing further motions, without an antecedent showing of good cause.

LEGAL ANALYSIS

 General Discoverability of Records
Defendants may examine pre-trial statements made by the People's witnesses provided the statements are within the People's possession or control, and are not deemed confidential. People v. Tissois, 72 NY2d 75, 78 (1988). Accordingly, the People cannot disclose what they [*4]cannot legally obtain. People v. Fuentes, 82 Misc 3d 1219(A), *3 (Crim Ct, Bronx County 2024). In some instances, such as where the FDNY/EMS [FN4]
works under direction from the People or police, defendants are entitled to associated records, because the records are considered within the People's possession. People v. Ajunwa, 75 Misc 3d 1220(A), *3 n 4 (Crim Ct, Bronx County 2022). When other materials, which are subject to discovery, are not within the People's possession, control or custody, the People must make a diligent, good faith effort at ascertaining whether records exist. Id. at *2; CPL § 245.50(2).

CPS Records
CPS's responsibilities are not prosecutorial; rather, CPS is concerned with the best interest of subject children. People v. Greene, 189 Misc 2d 276, 280 (Sullivan County Ct 2001). As such, a social worker's interview notes, taken during the course of employment, are confidential communications, protected from disclosure, and outside the People's possession or control. Tissois, supra 72 NY2d at 78. This is because social workers are not generally police agents, unless an agency relationship is created by cooperation with police under a joint venture, and the worker shares a defendant's incriminating statements with police. See Greene, supra 189 Misc 2d at 280.
As a result, a CPS caseworker is not engaged in law enforcement activity when she questions someone who is not in custody, during the course of an investigation which is not directed by the police. People v. Lewis, 83 AD3d 1206, 1208 (3d Dept 2011). And, information obtained by a CPS worker on a multidisciplinary family violence response team still does not make caseworkers police agents—even when such information leads to a criminal prosecution. Greene, supra, 189 Misc 2d at 281. Categorically, when police are not involved with CPS's initiation or execution of an interview with a criminal defendant, CPS is not a police agent. People v. Rodriguez, 135 AD3d 1181 (3d Dept 2016). This is because the mere existence of a joint task force involving CPS and the police, does not create an agency relationship. People v. Desjardins, 196 AD3d 1177, 1178 (4th Dept 2021). In the context of automatic CPL Art. 245 discovery, State agencies may still maintain independence, even when acting as arms of the police. People v. Gonzalez-Mendoza, 82 Misc 3d 508, 523 (Putnam County Ct 2023).
Turning to private third-party action for guidance, the factors relevant in assessing whether conduct rises to State action, include: 1) A clear connection between police and private investigations; 2) Police instigation of a private act; 3) Close police supervision of private conduct; and, 4) A private act on behalf of the police, in furtherance of police objectives. People v. Ray, 65 NY2d 282, 287 (1985). Since CPS workers are only rendered police agents under specific circumstances, courts should consider the degree of investigatory cooperation between CPS and the police. Desjardins, supra, 196 AD3d at 1178.
Even where State agencies are required to provide the DA with reports—in furtherance of a criminal investigation—the reports still are not necessarily within the DA's control. People v. Nova, 206 AD2d 132, 136 (1st Dept 1994). And since the Legislature has provided for separate criminal and quasi-criminal proceedings against a single individual, CPS records are generally not even available to a Family Court respondent's counsel defending a concurrent criminal proceeding. Matters of W. and V., 50 Misc 3d 1220 (A), *4 (Fam Ct, Bronx County 2014). As such, since a criminal defendant, who is also the subject of a CPS investigation, can [*5]obtain records directly from CPS, the People have no obligation in this regard. People v. Terry, 19 AD3d 1039, 1040 (4th Dept 2005). In all events, Brady [FN5]
analyses, such as these, are most commonly undertaken post-trial, where fact-specific judgments may be based upon a trial record, because at pre-trial stages, courts do not know what evidence will even be adduced. People v. Cesar G., 154 Misc 2d 17, 22 (Crim Ct, New York County 1991).
In Tissois, the defendant was accused of sexually abusing young children. He contended the children had been coerced to make accusations by their father. As such, the defendant subpoenaed a social worker's confidential notes memorializing pre-trial interviews of the children. Not only were these notes deemed outside the People's possession, but the trial court also determined the notes were not exculpatory, and contained nothing inconsistent with the children's testimony on direct examination.
In People v. Freeland, 36 NY2d 518 (1975), convictions for murder and attempted murder were reversed, because the trial court excluded evidence of the sole witness's heroin addiction. Although the case was primarily concerned with eyewitness identification, the Freedland Court held that evidence of a narcotic addiction is generally admissible to show impairment of a witness's powers of perception, observation, or recall. In Desjardins, the Fourth Department found a cooperative working arrangement between CPS and police, because CPS had knowingly interviewed the represented defendant, while in custody on criminal charges. Meanwhile, the CPS worker had received training on interviewing individuals accused (not suspected) of sexual offenses, and the worker immediately reported the defendant's inculpatory statements to the police. As a result, the statements should have been suppressed for being obtained in contravention of the right to counsel. In Ray, the Court of Appeals analyzed the interplay between a retailer's private investigation, and law enforcement. The Ray Court held that when a police officer only participates in a retail theft investigation, after the defendant has made inculpatory statements to the retailer, the retailer is not bound by Mirnada.[FN6]
As such, a shopkeeper does not engage in State (law enforcement action) by civilly arresting someone, eliciting inculpatory statements, investigating the detainee's conduct, and deciding whether to press prosecution.
Here, as a threshold matter, CPS is not a private actor. However, although CPS engages in State action, CPS does not engage in law enforcement activity. Accordingly, any CPS records pertaining to the Defendant are outside the People's possession and control, and the People have no corresponding CPL Art. 245 obligations, under Tissois. As such, Ajunwa is not operative, because CPS was not acting at the People's direction. In addition, under Greene, CPS's mission is focused on the subject complainant, and not on the Defendant. Moreover, there is no contention that CPS conducted post-arrest interviews of the Defendant, which could infringe on rights to [*6]counsel and rights against self-incrimination. Plus, under Greene, CPS would not engage in law enforcement activity, without having shared statements with the police. Yet, even if this were the case, under Lewis and Desjardins, any statements CPS elicited, would not have been in furtherance of criminal prosecution. 
While CPS and police were both involved in an investigation, such is the way of the world. Desjardins makes clear joint-taskforce investigations are permissible. Besides, there is no contention the police were directing, instigating, or supervising CPS; rather the defense merely states CPS took part in a multidisciplinary investigation. And under Rodriguez, there is no indication the police were controlling CPS.
Furthermore, under Gonzalez, a state agency can even act as an arm of the police, without engaging in law enforcement activity. And under Nova, even if CPS gave the People reports, those reports would still not be discoverable. At bottom, Matters of W. and V., plainly states that separate criminal and quasi-criminal proceedings against the same individual, are permissible. This is because CPS focuses on children, whereas police focus on criminal defendants. That both agencies are creatures of the same State, performing parallel investigations, is of no moment. Besides, under Terry, the Defendant can endeavor to obtain CPS's records from CPS.

Non-CPS Records
A complainant's medical records are not deemed Brady material, if the records are not within the People's possession. Matter of Jose A., 44 AD3d 756 (2d Dept 2007). As such, a criminal defendant bears a heavy burden seeking confidential information relating to a complainant. People v. Alvarez-Hernandez, 75 Misc 3d 128(A), *1 (App Term, 2d Dept). Because if all complainants who testified against criminal defendants had their psychiatric records scrutinized by defense counsel, very few would ever come forward. People v. Manzanillo, 145 Misc 2d 504, 506 (1989). Broadly, a defendant is entitled to favorable evidence where there is a reasonable possibility that, if disclosed, the evidence could lead to a different verdict. People v. McCray, 23 NY3d 193, 198 (2014). Accordingly, the People must make a diligent good faith effort to ascertain the existence of materials which are discoverable under CPL § 245.20(1). People v. Hall, 76 Misc 3d 804, 809 (Crim Ct, Bronx County 2022).

Medical Records of Criminally-Inflicted Physical Injuries
The People must act diligently toward procuring medical records documenting a complainant's treatment for criminally-inflicted physical injuries even if the records are not within the People's possession or control. People v. Hernandez, 80 Misc 3d 1035, 1039 (Crim Ct, Bronx County 2023). This is because such records are automatically discoverable under CPL § 245.20, when made by: 1) Or at the request or direction of a public servant engaged in law enforcement activity; or, 2) A person whom the People intend to call as a witness; or, 3) Where the People intend to offer the materials into evidence. People v. Casey, 81 Misc 3d 1203(A) (Crim Ct, Bronx County 2023). It goes without saying medical records are probative of criminally-inflicted physical injuries.
And this is why defendants are not be expected to obtain HIPAA [FN7]
releases for a [*7]complainant's medical records. Hernandez, supra, 80 Misc 3d at 1040. However, the People are not required to obtain psychiatric records which they are without legal means of procuring. People v. Schlesinger, 85 Misc 3d 1255(A), *7 (Crim Ct, Bronx County 2025). Therefore, when police request that a complainant receive medical treatment, associated records are more likely discoverable. People v. Dionisio, 81 Misc 3d 1247(A), *4 (Crim Ct, Bronx County 2024). So, in cases arising over physical injuries, the People routinely subpoena the complainant's corresponding medical records. Cesar G., supra, 154 Misc 2d at 18.
On the other hand, records not made at the People's request or direction, and not made by a public servant engaging in law enforcement activity, are not discoverable. People v. Rahman, 79 Misc 3d 129(A), *1 (App Term, 2d Dept 2023). For example, even though New York City's Office of the Chief Medical Examiner ("OCME") might be required to furnish the DA with information, OCME is neither a law enforcement agency, nor under the DA's control. People v. Nova, 206 AD2d 132, 135 (1st Dept 1994). This is because, like CPS, OCME is an independent agency, staffed by qualified and licensed professionals who do not possess police power, and act with their own independently specified purpose. Id. Similarly, even where the director of a facility under the jurisdiction of the Office of Mental Health ("OMH") is obligated to report crimes to the DA, the records are still not mechanically deemed within the People's possession. People v. Washington, 196 AD2d 346, 351 (2d Dept 1994).

A Complainant's Psychiatric Records
Psychiatric records are more protected than medical records, because psychiatric treatment revolves around confidential communications made under a physician-patient privilege. Reidout, supra, 140 Misc 2d at 635. Indeed, psychological records from independent agencies are not required to be turned over to the defense under Brady, Rosario [FN8]
, or the CPL, because the records are not within the People's possession or control. People v. Dalton, 27 AD3d 779, 782 (3d Dept 2006). Even where psychiatric records might contain prior inconsistent statements, the People are still not obligated to procure records outside their control. People v. John Doe, 170 Misc 2d 454, 458 (Sup Ct, Monroe County 1996); People v. Poole, 48 NY2d 144, 150 (1979). This goes even further, because there is no mechanism for compelling a complainant to authorize access to psychiatric records. People v. Valasquez, 49 Misc 3d 265, 272 (Crim Ct, Bronx County 2015). Finally, it would be highly unusual, and exceedingly rare, to have a complainant submit to a mental examination before testifying. People v. Acklin, 102 Misc 2d 596, 605 (Sup Ct, New York County 1980).
1. The Standard for Procuring Psychiatric Records
As a general proposition, prosecutorial care is appropriate when the defense demands [*8]specific materials, because if the defense shows a reasonable possibility that non-disclosure contributed to a guilty verdict, the conviction will be reversed. People v. Vilardi, 26 NY2d 67, 76-77 (1990). But where a complainant's psychiatric records are at-issue, it becomes much harder for the defense to demonstrate entitlement to the records, when the defense already knows of a psychiatric history. Cesar G., supra, 154 Misc at 25. And since psychiatric records may only be disclosed where confidentiality is significantly outweighed by the interests of justice, ordering records for in camera review is within a trial court's discretion. People v. Duran, 276 AD2d 498 (2d Dept 2000).
2. In Camera Review of Psychiatric Records
An application to obtain psychiatric records for in camera review should show records: 1) Exist; and, 2) Are exculpatory, or otherwise probative of the reliability of the complainant's testimony. People v. Maduro, 27 Misc 3d 127(A), *2 (App Term, 2d Dept 2010). However, courts must recognize the distinction between mere treatment by a psychiatrist, and a witness's long history of psychiatric problems (evinced by multiple confinements in mental hospitals and a paranoiac diagnosis). Peopele v. Knowell, 127 AD2d 794, 795 (2d Dept 1987). In the latter instance, records should be reviewed, because there is a reasonable likelihood that they might contain material bearing on the reliability and accuracy of the complainant's testimony. Id., at 794; People v. Diez, 73 Misc 3d 143(A), *1 (App Term, 2d Dept 2021).
Of course, in camera review by no means entitles the defense to access a complainant's psychiatric records. Valasquez, supra, 49 Misc 3d at 269. Rather, records should not be disclosed after in camera review, unless the court sees information which could: 1) Bear on the complainant's ability to perceive or recall the events giving rise to the charges; 2) Demonstrate a bias or hostility; 3) Provide a motive to fabricate; or, 4) Affect the trial's outcome. Cesar G., supra, 154 Misc 2d at 24.
3. Use of Psychiatric Records at Trial
A finder-of-fact should be fully-apprised of a witness's mental or physical deficiencies. People v. Acklin, 102 Misc 2d 596, 600 (Sup Ct, New York County 1980). When the People know, or have reason to know a crucial witness has a psychiatric history that affects the witness's reliability (emphasis added), the People must make a disclosure. Valasquez, supra, 49 Misc 3d at 271. And so, maintaining confidentiality of records is secondary, where a witness's mental competence at the time of the event they are testifying about may affect subsequent testimony. Reidout, 140 Misc 2d at 639. However, when the incident(s) giving rise to the charge(s) is purportedly the origin of a witness's mental health problems, records should remain confidential, because the witness's mental capacity at the time in question, is not affected. People v. John Doe, 170 Misc 2d 454, 460 (Sup Ct, Monroe County 1996).
Under the Interested Observer Doctrine, a psychologist, physician, teacher, parent, other layperson, or professional may testify objectively for the defense or People to aid the finder-of-fact's understanding of impediments to testimonial capacity. People v. Acklin, 102 Misc 2d 596, 600 (Sup Ct, New York County 1980). However, any such testimony: must be based on personal knowledge and contact with the witness; must not opine on the witness's credibility; and, may not even be allowed until the witness's inability to communicate on the stand is determined. Id.
3a. Safeguards Where Psychiatric Records are Not in Evidence
Non-disclosure of a complainant's records, which might assist the defense's [*9]confrontation, is allayed, where the defense uses related information for cross-examination. People v. Romero, 287 AD2d 325 (1st Dept 2001). So where psychiatric records are not in evidence, a court can still safeguard confrontation rights, by: 1) Allowing the defense latitude in exploring the complainant's psychiatric condition and medication intake; 2) Eliciting the complainant's refusal to provide access to psychiatric records; 3) Permitting expert testimony on the complainant's symptoms, and effects upon cognitive abilities; and/or, 4) Instructing the jury on the complainant's refusal to disclose a psychiatric history. Valasquez, 49 Misc 3d at 272. Non-disclosure of a complainant's psychiatric records can also be mitigated when the defense questions the complainant and/or knowledgeable relatives about the complainant's consultation with psychiatrists. People v. Arredondo, 226 AD2d 322 (1st Dept 1996).
Therefore, even if a court errs in disallowing disclosure of records, the error is mitigated if the defense elicits information about the complainant's treatment, condition, and hospitalization, and references this in summation. Delio v. People of the State of New York, 2003 WL 22956953, *13 (US Dist Ct, ED NY, 02 CV 5258, Weinstein, J., 2003). At the same time, a defendant's cross-examination of a CPS worker regarding a minor complainant's inconsistent statements, can obviate the need for production of records. People v. Dalton, 27 AD3d 779, 782 (3d Dept 2006). But even when a witness has a lengthy history of psychiatric problems, a defendant's access to corresponding records is still restricted if the defendant is afforded the opportunity to show the witness's testimonial capacity is adversely affected. Doe, supra, 170 Misc 2d at 459. This is because contents of psychiatric records are merely cumulative evidence, where the contents are known to the finder-of-fact. McCray, supra, 23 NY3d at 199.
Here, at the outset, strict reliance on authorities analyzing the discoverability of medical records in cases arising over criminally-inflicted physical injuries, is necessarily misplaced. Nor is there danger in running afoul of People v. DeJesus, 69 NY2d 855 (1987). There, the People possessed materials from the Bureau of Child Welfare, which seemingly contained the complainant's prior statements. As such, the Court of Appeals ordered a new trial, because without this knowledge, the defense could not sufficiently cross-examine and/or impeach the complainant. Meanwhile, in People v. Vilardi, 26 NY2d 67 (1990), an arson conviction was reversed where the People withheld a plainly exculpatory expert report within their possession, after the defense specifically sought discovery of expert reports relating to explosives. Here, since the People have disclosed the complainant's hospitalization, the defense is not prejudiced. This is inapposite to People v. Collins, 250 AD2d 379 (1st Dept 1998), where the First Department granted a CPL § 440.10 motion, because the defendant only learned the complainant had a history of mental illness, violence, and psychiatric hospitalization, after being convicted.
Matter of Johnson v. Sackett, 109 AD3d 427, 429 (1st Dept 2013) is particularly salient. There, the First Department would not allow Supreme Court to preclude the People from calling the complainant, because the complainant refused consent to the release of his psychiatric records. The Johnson Court found Supreme Court lacked authority to preclude the testimony because the complainant's psychiatric records were not discoverable and were not Brady material—even though the complainant was taking 3 psychotropic medications for bipolar disorder, and experienced auditory and visual hallucinations. As such, the People had no duty to ascertain the extent of the complainant's psychiatric history, and fulfilled their obligations by advising the defense of the complainant's diagnosis. Accordingly, inasmuch as the defense knew about the diagnosis and psychotropic medication, cross-examination would not be compromised.
In all events, under Johnson, Jose A., and Dalton, the complainant's psychiatric records [*10]are outside the People's control. As such, the People are not required to procure, or attempt to procure these records under Schlesinger. This is because the fear of a privacy invasion must not discourage the complainant from testifying at trial, pursuant to Manzanillo. After all, any statements contained in the complainant's psychiatric records are shrouded by a physician-patient privilege, under Reidout. As such, not only are the People relieved from any attempts to procure these records, but under Valasquez, the complainant is, too. And under Johnson, this Court will not suppress the complainant's testimony on these grounds.
Since the defense is well aware of the complainant's psychiatric incident, confidentiality outweighs disclosure, under both Cesar G. and Duran. Moreover, under Knowell, the records are of greatly diminished import, because it may hardly be said the complainant has a lengthy psychiatric history. The complainant's father's certification seemingly suggests the complainant was fine until he sustained a concussion. This would mean there is no long-standing history of mental illness, psychiatric visits, violence, or other factors set forth under Collins. Therefore, by disclosing the incident, the People did all Valasquez requires. Critically, Doe militates that the records remain confidential, because the incidents giving rise to the prosecution are the origin of the complainant's mental health problems. This bears repeating, because it belies any assertion that the records' connection to the criminal proceeding provides a basis for disclosure. Accordingly, under Doe and Reidout, the complainant's mental capacity at the time of the incident(s) in question has not been shown to be adversely affected.
Moreover, it is apropos of nothing that this Court would have preferred to review the records in camera, because this Court remains perfectly capable of safeguarding the Defendant's rights at trial. Under Delio, Romero, Arredondo, and Valasquez, the defense retains robust confrontational tools. Accordingly, at best, the complainant's psychiatric records would be cumulative evidence, under McCray. Finally, while the Court will not wade into trial strategy, it bears mentioning that the records could prove devastating to the defense.

 State Police Records
An SOR is presumed valid, and a defendant who challenges it must demonstrate the SOR is illusory, by showing the People were not actually ready at the time the SOR was filed. People v. Adams, 85 Misc 3d 14, 18 (App Term, 2d Dept 2024), lv to appeal denied, 43 NY3d 943 (2025). A defendant bears the ultimate burden of demonstrating an SOR is illusory. People v. Brown, 28 NY3d 392, 406 (2016). Here, while the defense believes there are additional discoverable State Police records, this assertion is not enough to overcome the presumption of validity, set forth under Adams. The People are steadfast in contending the State Police have no further records, and that everything has been turned over to the defense. Moreover, when an on-the-record inquiry was made following the People's on-calendar COC/SOR filings, the People answered ready.
As such, this Court simply cannot rebut a presumption of validity in response to a defendant's belief that more records exist. If this were the standard, no COC/SOR would ever be stable or meaningful, and courts would discredit certifications of counsel, as a matter of course. 

Courts of Record and the Power to Obtain Confidential of Psychiatric Records
In light of the Court's holding, there is no need for passing upon the constitutional branch of the application claiming a "dilution" of rights. After all, inasmuch the Defendant does not have rights to the psychiatric records, the Defendant's rights cannot have been diluted. In any event, the Court will attempt an analysis of this apparently novel issue. Doing so requires some recitation of jurisprudence discussing psychiatric records, because of MHL § 33.13's regulatory [*11]scheme.
Disclosure of a complainant's psychiatric records is strictly regulated. This is because a person's right to privacy includes protecting their health-related information. People v. D.L., 51 Misc 3d 336, 338 (Crim Ct, Bronx County 2016). As such, psychiatric records are not public. Id. After all, a mentally defective, or disabled complainant's privacy, should be guarded just as carefully as a criminal defendant's. People v. Acklin, 102 Misc 2d 596, 606 (Sup Ct, New York County 1980). And preserving confidentiality of a child's psychiatric records is particularly important. People v. Reidout, 140 Misc 2d 632, 635 (Sup Ct, Bronx County 1988). To this end, MHL § 33.13 allows a minor's parent to authorize the release of records. Matter of Evan E., 114 AD3d 149, 157 (3d Dept 2013).
In other instances, MHL § 33.13 mandates that psychiatric records may only be released under limited circumstances, including by order of a court of record. Cynthia B. v. New Rochelle Hosp. Med. Ctr., 86 AD2d 256, 260 (2d Dept 1982). This is because the Legislature decides which courts may order the disclosure of psychiatric records, because, subject to constitutional limitations, the Legislature centers such powers upon judges, as it deems advisable. Matter of Lee v. State of New York, 183 Misc 615, 617 (Ct Cl 1944). Under this premise, the Legislature determines whether a court has of-record status under the Judiciary Law. Matter of Moore, 125 Misc 607, 659 (Sup Ct, New York County 1925).
As such, even if a court is of great importance, hears many cases, and is of ancient origin, it is not necessarily a court of record. Id. at 614. Under common and statutory law, courts of record possess various attributes not conferred upon inferior courts. Matter of Deuel, 116 AD 512, 514 (1st Dept 1906). This is because, as courts of record are part of the New York State Judicial System, the Legislature may delegate additional duties onto them. Matter of Gilbert v. Republic Sheet Metal Works, Inc., 204 Misc 787, 788 (Utica City Ct 1953). Accordingly, a court of record is not an office, but rather an entity, agency, or institution within itself, vested with certain functions. Brown v. Sisti, 160 Misc 332, 339 (Supt Ct, Oneida County 1936).
Justice courts are not courts of record, under the State Constitution, or Judiciary Law. People v. Wanass, 55 Misc 3d 97, 99 (1st Dept 2017); People v. Fried, 61 Misc 3d 39, 40 (App Term, 2d Dept 2018). Therefore, justice court judges are not State officers, but rather officers of the municipality in which they sit. People ex rel. Garrity v. Walsh, 181 AD 118, 122 (2d Dept 1917). Yet, under the State Constitution, the Legislature may still regulate the justice courts. (NY Const, art. VI, § 17). Because the power of regulating criminal procedure is principally a legislative function. People v. Marrero, 8 Misc 3d 172, 175 (Sup Ct, Bronx County 2005). This is why a justice court's jurisdiction over criminal matters is regulated by the CPL. People v. Hickey, 40 NY2d 761, 762 (1976). And since the Legislature has contemplated differences between local criminal courts, and courts of record, justice courts are inferior, with statutorily limited jurisdiction. In Re City of Buffalo, 94 Sickels 422, 430 (1893); People ex rel. Folk v. McNulty, 256 AD 82, 88 (3d Dept 1939). In all events, when a court orders the release of a complainant's psychiatric records, the order must be predicated upon a finding that the interests of justice significantly outweigh the need for confidentiality. People by Abrams v. Westchester County S.P.C.C., 173 AD2d 687 (2d Dept 1991).

Distinctions Between Courts of Record and Courts Not of Record
The Court of Appeals has countenanced distinctions between criminal prosecutions in justice courts and courts of record. People v. Wanass, 55 Misc 3d 97, 99 (1st Dept 2017). Accordingly, defendants routinely find themselves in several courts, because felony cases [*12]commence in justice courts, and subsequently transfer to superior courts for trial. People v. Correa, 15 NY3d 213, 226 (2010). In addition, while a justice court possesses trial jurisdiction over misdemeanors, that jurisdiction is subject to divestiture by a superior court. Hickey, supra, 40 NY2d at 762. By the same token, CPL § 10.20 makes justice court jurisdiction concurrent with, and subject to divestiture by superior courts. People v. Butler, 11 Misc 3d 547, 551 (Sup Ct, Bronx County 2005); CPL § 10.30(1)(b).
This is because the Legislature may not abridge Supreme Court's sweeping subject matter jurisdiction. Folk, supra, 256 AD 82 at 92. Meanwhile, although county court and supreme court are both superior courts, county court's jurisdiction is limited by the State Constitution and the Legislature. People v. Torza, 193 Misc 2d 432, 434 (Sup Ct, Suffolk County 2002). Id. Accordingly, Supreme Court may divest a justice court of jurisdiction even without the condition precedent of a filed indictment. Id. at 436. This is because prosecutions by indictment are restrictions on prosecutorial power, and not jurisdictional curtailments. Correa, supra, 15 NY3d at 231.
Another distinction between local criminal and superior courts, is where, in certain instances, defendants charged with misdemeanors outside New York City, may be tried by jury, unlike those charged in New York City. Butler, supra,11 Misc 3d at 550. When criminal acts are committed within 500 yards of a county border, jurisdiction is validly conferred on either side thereof. People v. Berg, 101 Misc 2d 726, 729 (Nassau Dist Ct 1979). As such, offenses occurring within 500 yards of the New York City border, are jointly prosecutable within or without New York City. People v. Reilly, 58 AD2d 816 (2d Dept 1977).

Deference Toward Legislative Schemes
Legislatures are presumed to know what statutes are on the books, and those statutes are presumed constitutional. Easley v. New York State Thruway Auth., 1 NY2d 374 (1956). As such, courts must proceed carefully before finding legislation constitutionally infirm. People v. Gonzalez, 6 Misc 3d 1034(A), *2 (Sup Ct, Bronx County 2005). Accordingly, statutes should be read as written and if resulting consequences seem unwise, arguments for change should be addressed to the Legislature. People v. Plateau Assoc., 46 Misc 3d 1, 7 (App Term, 2d Dept 2014). A challenged statute should be viewed through the lens of a rational basis test, when the statutory classification does not involve a suspect class, or a fundamental interest. People v. Drayton, 39 NY2d 580, 584 (1976). Meaning, statutory discrimination may stand so long as any state of facts reasonably justify the classification. Id.

Constitutionality of Criminal Procedure
Even where undisclosed evidence favors the defense, a due process violation will only occur if the suppressed evidence is material to the issues in the case. Cesar G., supra at 20. Meanwhile, equal protection claims should be supported with allegations of a negative impact. People v. Marrero, 8 Misc 3d 172, 183 (Sup Ct, Bronx County 2005). Courts have passed on these claims in a variety of contexts. For example, equal protection does not necessarily demand territorial uniformity. Weissman v. Evans, 56 NY2d 458, 464 (1982).
On the other hand, equal protection is denied where a convicted defendant's immigration status is the sole basis for sentence of imprisonment, instead of a probationary one. People v. Cesar, 131 AD3d 223, 230 (2d Dept 2015). By the same token, a defendant's equal protection rights are violated when a sentencing court knows the defendant cannot pay, but orders confinement beyond the maximum permitted sentence, until a fine is paid. People v. Saffore, 18 NY2d 101, 104 (1966). Yet, equal protection is not violated where an affluent criminal [*13]defendant can pay transportation and lodging costs for out-of-state witnesses, while an indigent defendant cannot. People v. Carter, 37 NY2d 234, 240 (1975). Nor is equal protection denied when a defendant is convicted by a special jury [FN9]
, instead of by an ordinary one. People v. Donohue, 20 NY2d 824 (1967).
In People v. Drayton, 39 NY2d 580, 584 (1976), the Court of Appeals upheld provisions of the CPL providing that courts had discretion to treat an eligible youth charged with a felony as a youthful offender ("YO"), while a youth charged with a lesser crime, in a local criminal court was entitled to YO treatment. The Drayton Court reasoned the distinction was not arbitrary, but based upon the nature of crime adjudicated in superior court versus the nature of crime adjudicated in inferior court. At the same time, the Drayton Court was cognizant of judicial economies and disparities in caseloads and congestion in the various criminal courts.
In People v. Hendricks, 31 AD2d 754 (2d Dept 1969), the Court of Appeals rejected a YO's contention that equal protection was violated by his commission to a hospital operated by the Department of Corrections ("DOC"), instead of one operated by the Department of Mental Health ("DMH"). In Matter of Jayson C., 200 AD3d 447 (1st Dept 2021), the First Dept concluded Family Court denied an alleged juvenile delinquent equal protection by rejecting his application for CPL Art 245 discovery during the delinquency proceedings. There, the Hendricks Court found the juvenile was similarly situated to a criminal defendant. In People v. Ballot, 20 NY2d 600 (1967), equal protection was denied when the trial court did not allow the defendant an adjournment to raise money for procuring transcripts of an earlier mistrial. There, the Ballot Court concluded the defendant had a fundamental right to see the testimony of adverse witnesses in order for cross-examination to be effective.
In People v. Smith, 27 NY3d 643 (2016), the Court of Appeals noted distinctions between appeal procedures following local court convictions, and superior court convictions, where stenographers are present. In People v. Gonzalez, 6 Misc 3d 1034(A) (Sup Ct, Bronx County 2005), the defendant's equal protection claim was rejected. There, the case had transferred to Supreme Court, without the defendant having been indicted, or charged under Superior Court information. In People v. Butler, 11 Misc 3d 547 (Sup Ct, Bronx County 2005), the Chief Administrative Judge had transferred cases from the Criminal Court of the City of New York, to the Criminal Division of the Bronx County Supreme Court. After transfer, the cases would be adjudicated under the same substitutive and procedural law as would have previously applied. And in People v. Correa, 15 NY3d 213, 233 (2010), the Court of Appeals held that the transfer of cases from inferior courts to superior courts, does not violate equal protection, because the defendant did not identify any lesser treatment in superior court.
Here, at the outset, the defendant does not allege whether MHL § 33.13 is facially defective, or defective in its application. Regardless, the Court must begin with the premise that MHL § 33.13 is constitutional under Easley, and pursuant to Plateau Assoc., arguments to the contrary should be directed at the Legislature. Indeed, the defense's application states MHL § [*14]33.13's "court of record" distinction has "evaded legislative review." Inasmuch as the Court has already held the Defendant has no right to the complainant's psychiatric records, there is no fundamental right tied to the Defendant's constitutional attack. At the same time, the Defendant does not purport to belong to a suspect class. Accordingly, under Drayton, the Court will apply a rational basis test to MHL § 33.13's prescription for orders issued by courts of record. As such, if there is any factual basis for this distinction, MHL § 33.13 is sound as written. All the while, this Court would prefer if MHL § 33.13 said "pursuant to an order of a criminal court", instead of "pursuant to an order of a court of record."
Nonetheless, as seen, distinctions in criminal prosecutions are permeated throughout the CPL and, throughout the courts. This supports the proposition that different defendants may be haled into different courts, to answer the same charge. Moreover, cases are often transferred from a court not of record, to a court of record, as a matter of course, pursuant to Wanass. To be sure, under Lee and Moore, subject to limitation, the Legislature may decide which courts have of-record status, and which powers are given judges. And with Drayton in mind once again, the Legislature might have reasoned that courts of record are busier, and require the power to order records under MHL § 33.13, in order to keep their dockets moving. Even though justice courts also adjudicate misdemeanors, their non-record status is permissible under Wanass, Fried, Deuel, Gilbert, and Brown, and is entitled to deference under Plateau Assoc., Drayton, and Easley.
This means venue can: determine whether a defendant is indicted, under Torza and Gonzalez; determine whether a defendant is entitled to a jury trial, under Berg, Reilly, Hickey, and Butler; and, result in sentencing distinctions, under Drayton and Hendricks. At same time, Correa stood for the inverse of what the defense complains of. There, the Court of Appeals held a defendant could not prevail on a constitutional claim relating to distinctions between courts, without showing that upward transfer led to lesser treatment. Whereas, here, the defense contends upward transfer would lead to better treatment. 
In addition, the defense cannot prevail, particularly under Ballot, because again, the Defendant does not have a right to the records in question let alone a fundamental one. Also, to whatever extent the defense alleges financial hardship, and to whatever extent indigent defendants are members of a suspected class, in Carter, the Court of Appeals recognized inequalities between well-heeled defendants and indigent defendants do not necessarily amount to unequal protection. Moreover, under Drayton, courts of record often have jurisdiction of more serious crimes, thereby potentially requiring greater powers.
In all events, the Defendant here, is represented by private counsel. And if the defense wants to be situated in a venue where the complainant's records might be reviewed in camera, the defense is free to use the vacated and rescinded RCPC subpoena in support of an application for upward transfer, under CPL § 170.25. Then, should the application be granted, the defense can point to the subpoena once more, urging the law of the case [FN10]
militates toward in camera review. By no means is this Court issuing an advisory opinion, or suggesting trial strategy. But, in light of the defense's contentions, this Court cannot ignore CPL provisions which are necessarily invoked. And, of course, any potential presentment of this case to a grand jury, could cut either way. A grand jury might come return sans true bill. Or, a grand jury might come back [*15]with more, or even weightier charges. Yet, at the same time, it might also be said the constitutional contentions are not even ripe, until after a superior court has declined to divest this Court's jurisdiction. However, none of this is the Court's concern. What this Court remains concerned with, is: refraining from allowing its wants to become law, by invalidating a statutory provision it finds irritating.

Dismissals in Furtherance of Justice
The Second Department has noted that courts have historically, only sparingly ordered dismissals in furtherance of justice ("IFOJ"). People v. Clayton, 41 AD2d 204, 208 (2d Dept 1973). This is because IFOJ dismissals are only appropriate in the rare circumstances where the letter of the law should "be allowed to gracefully and charitably succumb to the spirit of justice." People v. Joseph P., 106 Misc 2d 1075 (Just. Ct. 1980), quoting People v. Davis, 55 Misc 2d 656, 659 (Sup Ct, New York County 1967). As indicated, IFOJ applications are only granted in the rarest of circumstances. Anything less, would amount to courts having ultra vires superpowers, resulting in impermissible intrusions onto the purviews of the Legislative and Executive branches, which respectively, make, and enforce laws. Courts cannot cavalierly dole out dismissals in criminal cases. Nevertheless, factors relevant in assessing whether an IFOJ dismissal is warranted, are enumerated under CPL § 170.40:
(a) the seriousness and circumstances of the offense;
Here, the defense admits the charged offenses are serious, but says the evidence is uncorroborated and contradictory. This argument is best left for summation (should the case reach the finder-of-fact). (b) the extent of harm caused by the offense;
Here, the defense claims the Defendant has been harmed, because there is a lack of evidence establishing harm to the complainant. This argument is more suitable for a motion at the conclusion of the People's case-in-chief.
(c) the evidence of guilt, whether admissible or inadmissible at trial;
Here, the defense posits the evidence against the Defendant is unreliable and insufficient. Again, these arguments should be made after evidence has been presented at trial.
(d) the history, character and condition of the defendant;
Here, the Defendant has appended several letters attesting to the Defendant's history and character. However, a court cannot dismiss a criminal case on the basis of a defendant's history, which is established by letters from interested acquaintances. If the defense puts on a case at trial, some character evidence might be received.
(e) any exceptionally serious misconduct of law enforcement personnel in the investigation, arrest and prosecution of the defendant;
Here, the defense points to a heated interaction between State Police and the Defendant's father. The defense also maintains the State Police recorded a call between the Defendant and defense counsel. This Court cannot conclude the State Police engaged in exceptionally serious misconduct. The contents of an impermissibly recorded call are better grounds for a suppression motion, than one for dismissal IFOJ.
(f) the purpose and effect of imposing upon the defendant a sentence authorized for the offense;
Here, the defense contends that continuing the case will punish the Defendant on the basis of unproven allegations. However, trial, and not pre-trial motion practice, is the [*16]arena for proving allegations. (g) the impact of a dismissal on the safety or welfare of the community;
Here, the defense does not marshal anything. Nevertheless, the defendant is charged with, inter alia, endangering the welfare of a child.
(h) the impact of a dismissal upon the confidence of the public in the criminal justice system;
Here, the defense contends public confidence is not served by letting the case proceed, because the allegations are baseless and inconsistent. Again, and in what is a recurring theme, this argument is best left for summation (should the case reach the finder-of-fact). And while the defense also claims the People have run afoul of CPL Art. 245, this Court has already held otherwise.
(i) where the court deems it appropriate, the attitude of the complainant or victim with respect to the motion;
Here, the defense maintains the complainant lacks credibility and reliability. However, this is better established via cross-examination, and in summation (should the case reach the finder-of-fact).
(j) any other relevant fact indicating that a judgment of conviction would serve no useful purpose.
Here, the defense does not suggest other facts, However, the defense's position is clear, as is the Court's.
Under Clayton and Davis, it is only in the rarest of circumstances where a case should charitably succumb to the spirit of justice, as in Joseph P. This Court cannot conclude such ultra-rare circumstances exist here. If the case is as weak as the defense suggests, the People will have difficulty shouldering their burden at trial. 

ORDER
The Defendant's motion is DENIED in toto. The People's cross-motion is granted to the extent that a Scheduling Order, establishing pre-trial procedures, will follow after the Court hears from the parties on June 18, 2025.
The Court holds: neither the CPS records, nor the complainant's psychiatric records are discoverable under CPL Art. 245. At the same time, the defense has not overcome the presumption of the SOR's validity. As such, the Speedy Trial Clock was tolled by the December 18, 2024 filing of the People's COC/SOR. Since the People must be ready for trial within 90 days of an action's commencement, where a class A misdemeanor is the top charge (People v. Brown, 28 NY3d 392, 403 (2016); People v. Rahman, 79 Misc 3d 129(A), *2 (App Term, 2d Dept 2023); People v. Hall, 76 Misc 3d 804, 810 (Crim Ct, Bronx County 2022)), the People were certified and stated well within time. In addition, the Court declines to hold MHL § 33.13 invalid, and/or dismiss the case on related constitutional grounds. Nor can this Court dismiss the case in the interest(s) or furtherance of justice. The Clerk shall enter this Order, without further Court action.
IT IS SO ORDERED.
May 29, 2025
Piermont, NY
Marc R. Ruby
Village Justice

Footnotes

Footnote 1:Inasmuch as this Decision is going to the State Reporter, this Court omitted the Defendant's name from the caption, on its own motion, without hearing from the parties. Counsel for the parties previously received copies of this Decision with the Defendant's name appearing in the caption. Moreover, every instance of this Decision bears the same, un-redacted Case Number. And every other document on this docket bears the Defendant's name. Candidly, this Court has not found precedent for this procedure in criminal cases. At the same time, and as evinced herein, this Court is not a court of record, and may not possess the power "to devise and make new process and forms of proceedings, necessary to carry into effect the powers and jurisdiction possessed by it", available to courts of record under Judiciary Law § 2-b. Nevertheless, at this juncture, this Court harbors concern for this action's minor complainant's privacy. Although the complainant is not identified herein, the small geography and population of a village might make safeguarding privacy difficult. Since this is not a civil case, the People are not in doubt over who they are prosecuting. Accordingly, but strictly in this one instance, the Defendant's name has been omitted form the caption. This Court feels publication/dissemination of this Decision might aid other justice courts, but is simultaneously conscious of the complainant's privacy. As such, and strictly in this one instance, the Defendant's name is omitted from the caption, for reasons discussed (if not relied upon) in: Anonymous v. Anonymous, 154 Misc 2d 46 (Sup Ct, Nassau County 1992); Anonymous v. Anonymous, 70 AD2d 538 (1st Dept 1979); and, Doe v. MacFarland, 66 Misc 3d 604 (Sup Ct 2019).

Footnote 2:The defense maintains the Speedy Trial clock has been ticking since the November 7 date stated above, as opposed to having reset with the subsequent November 20 filing. The 13-day difference has no bearing or effect on this decision.

Footnote 3:The corresponding legal standard will be discussed at-length, herein.

Footnote 4:Fire Department of the City of New York.

Footnote 5:The prosecution violates the Due Process Clause of the Fourteenth Amendment by suppressing evidence requested by the defense, which is material to guilt or punishment, irrespective of whether the suppression was in good, or bad faith. Brady v. Maryland, 373 U.S. 83, 87 (1963).

Footnote 6:The prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. Miranda v. Arizona, 384 US 436, 444 (1966).

Footnote 7:The HIPAA Privacy Rule states: protected health information may disclose to third parties with a valid authorization that must contain specific 'core elements and requirements,' including a 'specific and meaningful' description of the protected health information to be used or disclosed, the identity of those persons or classes of persons authorized to make and receive the requested use or disclosure, an expiration date or event, the individual's signature, and a statement notifying the signatory of the right to revoke the authorization in writing. Porcelli v. N. Westchester Hosp. Ctr., 65 AD3d 176, 183 (2d Dept 2009).

Footnote 8:Reversal of a conviction is required where there is a rational possibility the jury would have reached a different verdict if the defense had been allowed the use prior statements to impeach an adverse witness. People v. Rosario, 9 NY2d 286, 291 (1961).

Footnote 9:Under a repealed provision of the Judiciary Law, special juries were drawn from lists prepared and kept by a special jury commissioner ("SJC"). The SJC compiled lists of persons qualified to serve as ordinary jurors, and also deemed qualified to serve as special jurors, after personal examination by the SJM. Schuster v. City of New York, 25 Misc 2d 670, 675 (Sup Ct, Kings County 1960).

Footnote 10:The law of the case doctrine states there is no need to re-open a recently issued decision. People v. Gonzalez-Mendoza, 82 Misc 3d 508, 512 (Putnam County Ct 2023).